706 A.2d 334

COMMONWEALTH of Pennsylvania, Appellee,

v.

Jose UDERRA, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 17, 1996.

Decided Jan. 26, 1998.

Reargument Denied April 20, 1998.

Lee Mandell, for J. Uderra.

Catherine Marshall, Lawrence J. Goode, Philadelphia, Robert A. Graci, Harrisburg, for the Commonwealth.

Before FLAHERTY, C.J. and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This is a direct appeal pursuant to 42 Pa.C.S. §§ 722(4) and 9711(h). Appellant, Jose Uderra, was convicted by a jury of

one count each of murder in the first degree, robbery, possession of an instrument of crime and criminal conspiracy. At the conclusion of the penalty phase of Appellant's trial, the jury returned a sentence of death.

The evidence of record, viewed in the light most favorable to the Commonwealth as verdict winner, discloses the following. At approximately 7:00 a.m. on October 18, 1991, the victim, Michael Sharpe, went to the 2900 block of North Orkney Street in Philadelphia to purchase drugs. There, Juan Perez sold Sharpe several vials purporting to contain crack cocaine, which in reality contained ordinary detergent. After discovering the ruse, Sharpe returned at approximately 8:00 a.m., and demanded his money back from Perez. As the two men argued, Appellant, armed with a twelve gauge single-barrelled sawed-off shotgun, approached to assist Perez.

When Sharpe refused to comply with Appellant's and Perez's subsequent demands for money, Appellant and Perez threw Sharpe to the ground, hit and kicked him, and went through his pockets. Perez forcibly removed Sharpe's shoes and coat, throwing the shoes toward the roof of a nearby house and the coat across the street. After unsuccessfully attempting to force Sharpe into an abandoned house, Appellant stood Sharpe up against a wall and shot him in the chest with the shotgun.[1] The victim was shot at such close range that the shotgun shell wadding entered his body.

Immediately following the shooting, Appellant fled to a green station wagon parked on North Orkney Street. Before entering the station wagon, Appellant handed the shotgun to Joanne Rivera, who was standing beside the vehicle, and ordered her to hide it. The victim, although mortally wounded, somehow managed to cross the street and enter a vacant lot, where he collapsed.

Two eyewitnesses, Maria Martinez and Maria Carrasquillo, separately watched the events from windows of their respective homes on the 2900 block of North Orkney Street. Both

1. This version of the events was provided by one of the Commonwealth's two eyewitnesses. The other eyewitness testified that it was Perez who held Sharpe against the wall while Appellant shot him.

eyewitnesses immediately called the police, who arrived at the scene within minutes and found the victim alive and bleeding profusely from his chest wound, unable to speak or respond to questions. The victim was transported to Temple University Hospital, where he was pronounced dead.

Having been informed by Martinez and Carrasquillo that the shooter had fled to a green station wagon parked on North Orkney Street, officers later discovered Appellant and an unidentified woman in a green 1973 AMC Hornet station wagon. Martinez and Carrasquillo identified Appellant as the killer. They each recognized Appellant because he had been living in the station wagon parked on North Orkney Street.

Later that afternoon, Joanne Rivera admitted that she had hidden the shotgun at the request of Appellant and directed officers to its hiding place under some debris about two blocks from the crime scene. Officers retrieved the shotgun and recovered a fired shell casing from it. Ballistics testing was conducted on the shotgun and the spent shell casing that was found in it and it was determined that the shell found in the shotgun had been fired by that shotgun to the exclusion of all others. Officers also found an unspent shotgun shell in the station wagon, which was consistent with the shell found in the shotgun and with the pellets recovered from the victim's body. The shell wadding recovered from the victim's body was also consistent with the type of shell found in the shotgun.

Following the denial of Appellant's motion to sever his trial from that of his co-defendant, Juan Perez, trial commenced on June 1, 1993. On June 4, 1993, the jury convicted Appellant of all charges.[2] Appellant was sentenced to death for the murder conviction.[3] The jury found as an aggravating cir-

---

**2.** Perez was convicted of second degree murder and was sentenced to life imprisonment. Although Perez filed no post trial motions, he appealed to Superior Court, challenging the weight and sufficiency of the evidence. On August 24, 1995, the Superior Court remanded the case back to the trial court to determine whether trial counsel was ineffective for failing to challenge the weight of the evidence below. *See Commonwealth v. Perez*, 444 Pa.Super. 570, 664 A.2d 582 (1995).

**3.** No sentences were imposed on Appellant's robbery, possession of an instrument of crime and criminal conspiracy convictions.

cumstance that Appellant committed the killing while in perpetration of a felony, 42 Pa.C.S. § 9711(d)(6). No mitigating circumstances were found.

Appellant contends that the evidence was insufficient to support his conviction for first degree murder. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to support all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986). In order to prove murder in the first degree, the Commonwealth must show that a human being was unlawfully killed, that the accused committed the killing and that the killing was done in an intentional, deliberate and premeditated manner. 18 Pa.C.S. § 2502(a); *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624 (1991). The element which distinguishes first degree murder from all other degrees of criminal homicide is the presence of a willful, premeditated and deliberate intent to kill. *Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439 (1995).

Appellant specifically alleges that the evidence was insufficient to support the verdict of first degree murder because the Commonwealth did not prove that Appellant had the requisite specific intent to kill. Appellant's disingenuous claim is belied by the fact that Appellant shot the victim in the chest with a sawed-off shotgun, which could only be fired after both cocking the hammer and pulling the trigger, at such close range that the shell wadding entered the victim's body. Specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). The eyewitness testimony and corroborating evidence are clearly sufficient to support Appellant's conviction for first degree murder.

Appellant next claims that the trial court erred in denying his motion to sever his trial from that of his co-defendant. After being arrested, Perez gave a statement

admitting his participation with Appellant in the robbery of Michael Sharpe and implicating Appellant as Sharpe's killer. After Appellant's motion for severance was denied, Perez's statement was redacted and all references to Appellant were replaced with the moniker "X." The redacted statement was read into evidence at trial. That section of the redacted statement implicating Appellant was as follows:

He [Sharpe] asked for his money back and told me that my stuff was no good. I then pulled a good cap from my pocket and showed it to him. This was one of the caps that I had just gotten and I told him to taste it. That's when X walked up to where we were at. X had the sawed-off shotgun. X started to go into the guy's pockets. He got a couple of dollars out of his pockets, just something real small and stupid.

Before any of the shooting happened, we were both kicking this guy to keep him on the ground. By the time the shooting happened I was almost to the corner of Indiana and Orkney Streets. The guy got up and stumbled across the street and fell onto the muddy lot. I then went home.

N.T. 6/2/93 at 64.

The trial court gave a limiting instruction to the jury that Perez's redacted statement could be considered only against him and not in any way against Appellant. The limiting instruction was as follows:

[A] statement that is made before trial may be considered as evidence only against the defendant who made the state-ment. Thus you may consider the statement as only as [sic] evidence against Defendant Perez, if you believe he made the statement voluntarily. You must not consider the state-ment as evidence against the co-Defendant Uderra. You must not use the statement in any way against him.

N.T. 6/3/93 at 96.

Appellant argues that the trial court erred in denying his motion to sever on the grounds that Perez's redacted state-ment to police "powerfully incriminated" Appellant. Appellant goes on to argue in a related claim that the subsequent

admission of Perez's redacted statement violated his constitutional right to confrontation.

The Commonwealth contends that the trial court was well within its discretion in denying Appellant's motion to sever and that a joint trial was particularly appropriate in this case. The Commonwealth points to the fact that Appellant and Perez were both charged with identical counts arising from the same incident; the same witnesses and virtually the same evidence, with the exception of Perez's redacted confession, formed the case against each defendant. With regard to Perez's redacted statement, the Commonwealth argues that any prejudice to Appellant was cured by the trial court's limiting instruction to the jury that the redacted statement could only be considered against Perez and not in any way against Appellant.

In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause of the Sixth Amendment when a non-testifying co-defendant's confession naming the defendant as a participant in the underlying crime is introduced at their joint trial. The Court held that while a jury is ordinarily presumed capable of following a court's instruction regarding the limited use of evidence, the possibility of prejudice arising from the introduction of such a confession by a non-testifying co-defendant is so great that a new trial is required even where the court specifically instructs the jury that the co-defendant's confession must only be considered as evidence against that co-defendant.

In *Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859 (1977), this Court approved redaction as an appropriate method of protecting a defendant's rights under *Bruton*. As stated in *Johnson:*

If a confession can be edited so that it retains its narrative integrity and yet in no way refers to [the] defendant, then use of it does not violate the principles of *Bruton*. The practical application of the theory may be difficult and in

many cases it may be decided that separate trials are necessary. However, this kind of determination must be made on a case by case basis.

474 Pa. at 412, 378 A.2d at 860.

■■■ Appellant claims that the trial court's denial of his motion to sever was reversible error. We disagree. The decision whether to sever trials of co-defendants is within the sound discretion of the trial court and will not be disturbed on appeal absent abuse of that discretion. *Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931 (1992). The critical factor that must be considered is whether the accused has been prejudiced by the trial court's decision. *Commonwealth v. Chestnut,* 511 Pa. 169, 512 A.2d 603 (1986). The appellant bears the burden of establishing such prejudice. *Commonwealth v. Lambert,* 529 Pa. 320, 603 A.2d 568 (1992).

Although Perez's redacted statement did imply that the identity of "X" was Appellant, Appellant has failed to demonstrate that he was prejudiced by the denial of his motion to sever. In *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the United States Supreme Court stated:

The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

405 U.S. at 430, 92 S.Ct. at 1059.

In light of the overwhelming evidence of Appellant's guilt, the trial court's decision not to sever Appellant's trial from that of his co-defendant and to admit into evidence his co-defendant's redacted statement did not result in prejudice. Accordingly, we find no abuse of discretion on the part of the trial court. *See Commonwealth v. Washington,* 547 Pa. 550, 692 A.2d 1018 (1997); *Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992).

Appellant's remaining six arguments challenge the effectiveness of trial counsel. The standard of review for ineffective assistance of counsel is well established. Counsel is presumed effective and the burden of proving ineffectiveness rests with the defendant. *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984). In order for Appellant to prevail on a claim of ineffectiveness he must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

Appellant alleges in two related claims that counsel was ineffective for failing to properly interview and confer with him before trial and failing to properly prepare for his penalty hearing. The thrust of Appellant's claims is that counsel was ineffective for allegedly failing to investigate whether Appellant had used drugs in the past, whether Appellant was under the influence of drugs at the time of the murder and whether Appellant had a history of psychological problems.

Contrary to Appellant's allegations, the record discloses that trial counsel conferred with Appellant numerous times prior to and during trial. Counsel directed an investigator to search for potential witnesses, but that search was hampered by Appellant's own failure to provide information about the identity and location of his family members. Counsel testified at Appellant's post-trial motion hearing that Appellant did not inform him of any alleged drug use until after the trial had already commenced, at which time he evaluated the proffered information and determined that it did not establish that Appellant was impaired at the time of the murder. With regard to Appellant's alleged history of psychological problems, counsel unequivocally testified that Appellant never revealed any such problems to him, adding that if he had known of such information, he would have subpoenaed the hospital records.

█ The reasonableness of counsel's investigation and preparation depends critically on the information supplied by the defendant. *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). Appellant's own failure to cooperate with counsel in order to apprise him of allegedly relevant information cannot now provide a basis for ineffectiveness claims.

█ Appellant next alleges that counsel was ineffective for failing to object to comments made by the prosecutor during the penalty phase of trial. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Sam*, 535 Pa. 350, 635 A.2d 603 (1993).

Appellant contends that the following comments were improper:

This is the aggravating factor in this case, Ladies and Gentlemen, that in Jose Uderra's mind, the death of Michael Sharpe, the death which he intended, I submit to you, to cover up to make sure there was no immediate discovery, to keep Michael Sharpe from rousing the alarm or to try and overcome Michael Sharpe's resistance to the death of Michael Sharpe to him was only a means to an end, a means to commit that robbery. That is why its an aggravating factor in this case.

N.T. 6/7/93 at 38.

When considered in context, the prosecutor's remarks did not constitute prosecutorial misconduct. The challenged comments were merely a permissible attempt to relate the evidence to the aggravating circumstance sought to be proved, that Appellant committed the killing while in perpetration of a felony. Counsel was not ineffective for failing to object.

Appellant next claims that counsel was ineffective for denying Appellant his constitutional right to testify. The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. *Commonwealth v. Bazabe,* 404 Pa.Super. 408, 414, 590 A.2d 1298, 1301, *alloc. denied,* 528 Pa. 635, 598 A.2d 992 (1991); *Commonwealth v. Fowler,* 362 Pa.Super. 81, 523 A.2d 784, *alloc. denied,* 517 Pa. 598, 535 A.2d 1056 (1987). In order to sustain a claim that counsel was ineffective for "failing to call the appellant to the stand," the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. *Id.* Appellant's claim does not satisfy either requirement.

At Appellant's post-trial motion hearing, counsel testified that while he advised Appellant not to testify, he did not in any way prevent Appellant from taking the stand. Appellant does not demonstrate that counsel's advice was unreasonable, nor does he offer support for his assertion that counsel prevented him from testifying. Appellant's ineffectiveness claim necessarily must fail.

Appellant next claims that counsel was ineffective for failing to present a diminished capacity defense. In order to prove an ineffectiveness claim for failure to raise a diminished capacity defense, the defendant must show that there was a basis for the defense and that counsel knew of the basis. *Commonwealth v. March,* 528 Pa. 412, 598 A.2d 961 (1991). As mentioned previously, counsel testified at Appellant's post-trial motion hearing that Appellant did not inform him of any alleged drug use until after the trial had already commenced, at which time he evaluated the proffered information and determined that it did not establish that Appellant was impaired at the time of the murder. Appellant has failed to demonstrate any basis for a diminished capacity defense. Appellant's assertion of counsel's ineffectiveness in this regard is merely another attempt by Appellant to obfuscate his own failure to apprise counsel of allegedly relevant information.

 Finally, Appellant alleges that counsel was ineffective for not filing a Rule 1100 dismissal motion.[4] Appellant's claim is unsupported by argument and contains only the assertion that his trial did not commence until more than 365 days after the complaint was filed against him.

According to the Commonwealth, the Rule 1100 mechanical run date was October 19, 1991. Defense-requested continuances were granted on December 10, 1991, January 14, 1992, and February 11, 1992, accounting for an approximate three month delay. The case went into the homicide calendar ready pool on March 9, 1992, only five months after the mechanical run date, but due to court congestion in the Philadelphia docket, jury selection did not commence until June 1, 1993, approximately nineteen and one-half months after the mechanical run date. Brief for Appellee at 49–50.

In *Commonwealth v. DeBlase*, 542 Pa. 22, 665 A.2d 427 (1995), this Court stated:

[A] trial must commence at most no later than 365 days from the date on which the criminal complaint is filed unless there is excusable delay caused by the defendant, his counsel or court congestion.

542 Pa. at 31, 665 A.2d at 431. Any delay in this case is attributable to Appellant's continuance requests and the crowded homicide calendar in Philadelphia. Thus, no Rule 1100 violation occurred. Counsel cannot be ineffective for failing to assert this baseless claim.

Section 9711(h)(3) of the Judicial Code provides that:

The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

4. Rule 1100 provides in pertinent part:
(a)(3) Trial in a court case in which a written complaint is filed against the defendant, where the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.
Pa.R.Crim.P. 1100(a)(3).

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3).[5]

Having reviewed the record in this case, we do not find that the sentence of death was the product of passion, prejudice or any other arbitrary factor.

 Furthermore, we find that there was sufficient evidence to support a finding of the aggravating circumstance, that Appellant committed a killing while in perpetration of a felony, here robbery. In order to prove robbery, the Commonwealth must show that in the course of committing a theft, the defendant either inflicted serious bodily injury on another or physically removed property of another by force. 18 Pa.C.S. § 3701; *Commonwealth v. Ford*, 539 Pa. 85, 650 A.2d 433 (1994), *cert. denied*, 514 U.S. 1114, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995). An act is deemed "in the course of committing a theft" if it occurs in an attempt to commit a theft or in flight after the commission of the theft. *Id.* The robbery in the instant case was one continuous event beginning when Appellant confronted the victim with the shotgun, emptied the victim's pockets, removed the victim's shoes and coat and unsuccessfully attempted to force the victim into an abandoned building. The robbery culminated in Appellant fatally shooting the victim and retreating to the parked station wagon. Clearly, sufficient evidence was presented that Appellant committed the killing while in the perpetration of a felony.

5. Effective June 25, 1997, the General Assembly removed proportionality review from the death penalty statute by deleting all of subsection (h)(3)(iii) and the part of subsection (h)(4) that references proportionality review. *See* Act 28 of 1997. However, because Appellant's sentence of death was imposed before the effective date of the act, he is statutorily entitled to proportionality review. *Commonwealth v. Gribble*, —— Pa. ——, 703 A.2d 426 (1997).

■ Based on our review of the statistical data provided by the Administrative Office of Pennsylvania Courts, we conclude that the sentence of death was not excessive or disproportionate to the penalty imposed in similar cases. The judgment of sentence is affirmed.[6]

---

**6.** The Prothonotary is directed to transmit to the Governor a full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court. 42 Pa.C.S. § 9711(i).