**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey M. KUZMANKO, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 12, 1998.

Filed March 3, 1998.

Kevin G. Sasinoski, Asst. Public Defender, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before TAMILIA, KELLY and HOFFMAN, JJ.

TAMILIA, Judge:

Jeffrey M. Kuzmanko appeals from the January 14, 1997 judgment of sentence imposing a life term of imprisonment. Following a January 13–14, 1997 nonjury trial, appellant was adjudged guilty of first degree murder.[1]

Appellant raises the following issues on appeal:

I. Did the Commonwealth fail to meet its burden to prove that the defendant's pre-arraignment statement and waiver of his right to remain silent was "voluntary" insofar as the statement was made seven (7) hours after the defendant's arrest, and the Commonwealth failed to establish the delay between the arrest and arraignment was not unnecessary?

II. Did the Commonwealth and the Commonwealth's key witness deliberately misrepresent the facts with regard to whether the defendant was under arrest at the time of his interrogation, insofar as the prosecutor and Detective Mc Cabe failed to in-

---

1. 18 Pa.C.S. § 2502(a).

form defense counsel or the court of the significance of the preparation of an "action sheet" recording the defendant's movements while in police custody, which is only prepared when a defendant is placed under arrest?

III. Did the police violate the defendant's Fifth Amendment rights by failing to re-advise him of his *Miranda* rights upon recommencing their interrogation of him seven (7) hours after they initially interviewed them?

IV. Was the defendant's post arraignment statement elicited in violation of his right to counsel under the Sixth Amendment and article 1, § 9 of the Pennsylvania Constitution; and was trial counsel ineffective for failing to adequately preserve this issue?

V. Was counsel ineffective for failing to investigate and present evidence to support a diminished capacity defense?

(Appellant's Brief, p. 3.)

█ Issues number I through IV pertain to the court's denial of appellant's motion to suppress the inculpatory statements he made to police investigators. The evidence relevant to appellant's motion to suppress is summarized as follows:

[O]n April 12, 1996, City of Pittsburgh Police were called to the home of John Felitsky. Mr. Felitsky was found dead as the result of multiple stab wounds to his body.

[Appellant] was initially interviewed by Detective Condemi and Sergeant Metz of the Pittsburgh Police on April 13, 1996. [Appellant] agreed to accompany the detectives to their office for an interview that was part of the initial canvassing of the neighborhood. At the conclusion of this interview, [appellant] was returned to his home.

[Appellant] was next interviewed by the City of Pittsburgh Police on April 16, 1996. Once again, [appellant] voluntarily agreed to come to the homicide detectives' office for an interview. [Appellant] was not under arrest, nor was he restrained in any way.

[Appellant's] second interview was conducted by Detective Robert McCabe of the City of Pittsburgh Police. Detective McCabe's initial contact with [appellant] occurred at approximately 5:30 p.m. on April 16, 1996.

Prior to interviewing [appellant], Detective McCabe advised [appellant] of his Miranda[2] rights. [Appellant] was not in custody and was told that he was not being charged with anything. The detectives initially sought to obtain fingerprint impressions from [appellant] at this time for comparison purposes.

[Appellant] signed a pre-interrogation warning form on April 16, 1996 at 5:30 p.m., agreeing to talk to the Detectives. The words "of arrest" were scratched out on this form, as the [appellant] was not under arrest at the time that he was questioned. The interview that subsequently took place was conducted by Detectives McCabe and Logan.

Testimony at the suppression hearing revealed that following the advisement of his rights at 5:30 p.m., [appellant's] fingerprints were taken by a crime unit at 6:00 p.m. The interview with [appellant] subsequently began at 6:20 p.m. The [appellant] took a break at 6:30 p.m. to go to the men's room. Following his return from the men's room, the interview continued until 7:05 p.m. At that time, [appellant] was left alone in the room. The room was not locked, and [appellant] was free to go at all times.

At 7:35 p.m., [appellant] was given cigarettes and pop. At 8:10 p.m., he left the room to make a phone call, and returned to the interview room, remaining in that room until midnight. At midnight, the interview resumed, and at 1:00 a.m. on April 17, 1996, the interview was completed. At 2:34 a.m. on April 17, 1996, [appellant] was removed from the interview room, now under arrest, and taken to the Coroner's Office for a preliminary arraignment.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[Appellant's] actual arrest did not take place until after the interview had resumed at midnight, and when the interview concluded at 1:00 a.m. on April 17, 1996. It was only during the time period between midnight and 1:00 a.m. that the [appellant] made inculpatory statements, leading to his arrest for the murder of John Felitsky.

Following his arraignment at the Coroner's office, the [appellant] was taken to the Allegheny County Jail, arriving at that institution at 3:06 a.m. At no time had [appellant] refused to answer questions, invoked his right to the services of an attorney or requested the appointment or assistance of counsel.

On the afternoon of April 17, 1996, [appellant] was again returned to the City of Pittsburgh homicide section. At this time, another interview was conducted. [Appellant] was again advised of his Miranda rights, again waived those rights and again gave a statement to the detectives concerning the murder of John Felitsky. This latter statement was tape recorded. The tape recording contains the advisement of the [appellant's] rights, and his waiver of those rights.

(Slip Op., Cercone, J., 6/12/97, pp. 1–4.)

■■■ "In reviewing a ruling on a suppression motion, the standard of review is whether the factual findings and legal conclusions drawn therefrom are supported by the evidence." *Commonwealth v. Bronshtein,* 547 Pa. 460, 472, 691 A.2d 907, 913 (1997), *citing Commonwealth v. Bond,* 539 Pa. 299, 306, 652 A.2d 308, 311 (1995). Moreover, "we must consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Hall,* 701 A.2d 190, 197 (Pa.1997), *citing Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985),

*cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

This Court has conducted an independent review of the record and employed an objective test to determine whether appellant might have reasonably perceived himself as being under arrest or subject to a custodial interrogation at any time prior to the midnight interview.[3] *Commonwealth v. Miller,* 426 Pa.Super. 410, 422, 627 A.2d 741, 748 (1993), *citing Commonwealth v. Lagana,* 517 Pa. 371, 537 A.2d 1351 (1988). Both parties agree that by the conclusion of the midnight interview, appellant had been placed under arrest and the suppression court found appellant was not under arrest until he made inculpatory statements during his midnight interview.

We find the record supports the findings of the suppression court. It is clear appellant was cooperating with the police voluntarily. The evidence shows appellant was aware of his *Miranda* rights and understood he was free to leave at any time. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Moreover, nothing in the record indicates any pressure or cajolement on the part of police. By every indication, appellant was not under arrest or otherwise subject to custodial interrogation until the midnight interview. As appellant was arraigned at 2:52 a.m., April 17th, the six-hour rule of *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), as modified in *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987), has no application to the instant matter. We find, therefore, appellant's issues I and II are without merit.

■■■ Turning next to the argument appellant should have been advised of his *Miranda* rights prior to the midnight interview (issue III), the suppression court found under the totality of the circumstances, the *Miranda* warnings given earlier that day at 5:30 p.m. had not become stale. "[N]ot every renewal of the interrogation process requires the repetition of *Miranda* warnings." *Commonwealth v. Proctor,* 526 Pa. 246, 255, 585 A.2d 454, 459 (1991). Factors to be consid-

---

**3.** The "midnight interview" refers to the interview conducted from approximately midnight, April 16th, to 1:00 a.m., April 17th.

ered are: " 'the length of time between the warning and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning and whether statements obtained are materially different from other statements that may have been made at the time of the warnings.' " *Id., quoting Commonwealth v. Bennett,* 445 Pa. 8, 15, 282 A.2d 276, 280 (1971).

Once again, the record supports the findings of the suppression court in that appellant was advised of his rights earlier that same day, he was in the same place and asked the same questions earlier in the day and the circumstances as a whole support the conclusion appellant was as aware of his *Miranda* rights at midnight as he was at the time they were explained to him.

■ Appellant's remaining challenge to the denial of his motion to suppress pertains to statements he made the afternoon of April 17, 1996, having been arrested and arraigned early that morning. Appellant bases his challenge on the theory once arrested, appellant's Sixth Amendment and corresponding Pennsylvania Constitution, Art. 1 § 9, right to counsel attached and the subsequent police-initiated interrogation was violative of said right. "The right to counsel is enunciated in the *Miranda* warnings. The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* rights." *Hall, supra* at 283, 701 A.2d at 197, *citing Commonwealth v. Hughes,* 521 Pa. 423, 443, 555 A.2d 1264, 1274 (1989).

■ It is well-settled in Pennsylvania even "a person accused of a crime who has already engaged counsel may, with full knowledge of his rights but in the absence of counsel, effectively waive his right to have counsel present while he is questioned by the police." *Id., citing Commonwealth v. Lark,* 505 Pa. 126, 132, 477 A.2d 857, 862 (1984). In the instant matter, appellant neither requested counsel nor invoked his right to remain silent. Instead, appellant executed a knowing, voluntary and intelligent waiver of his *Miranda* rights.

■ "[W]hen a suspect waives his right to counsel after receiving warnings equivalent to those prescribed by *Miranda v. Arizona, supra,* that will generally suffice to establish a knowing and intelligent waiver of the Sixth Amendment right to counsel for purposes of post-indictment questioning." *Michigan v. Harvey,* 494 U.S. 344, 349, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293, 301 (1990).

We find this claim, along with appellant's other suppression claims, fails and the trial court correctly denied appellant's motion to suppress. Appellant's corresponding ineffective assistance of counsel claim fails as well for, as previously discussed, the underlying claim lacks arguable merit. *Commonwealth v. Dean,* 693 A.2d 1360, 1366 (Pa.Super.1997) (If the issue underlying the ineffective assistance of counsel claim is without merit, the inquiry into counsel's effectiveness ends.).

■ Lastly, appellant argues trial counsel was "ineffective for failing to investigate and present evidence to support a diminished capacity defense." (Appellant's Brief, p. 3.) In support of this claim, appellant attached the affidavits of psychiatrist Dr. Lawson Bernstein, appellant's parents and appellant himself. In addition, the Mayview State Hospital Psychiatric Assessment ("the Mayview Report") of May 17, 1996 with its July 22, 1996 appendix also has been attached.

■ The defendant maintains the burden of proving ineffectiveness for it is well-settled counsel is presumed to have been effective. *Dean, supra.* Appellant may overcome this presumption by establishing the following:

(1) the underlying claim is of arguable merit;

(2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and

(3) counsel's ineffectiveness prejudiced him.

*Commonwealth v. Uderra,* —— Pa. ——, ——, 706 A.2d 334, 339 (1998). The Mayview Report was prepared following a complete mental examination of appellant and states, inter alia, appellant has experienced "symp-

toms of depression, paranoia and auditory hallucinations."

The August 26, 1997 affidavit of Dr. Bernstein was based solely upon review of the Mayview Report and affidavits and in pertinent part states as follows:

5. It is my opinion within a reasonable degree of medical certainty that at the time of the alleged offense, Mr. Kuzmanko was suffering from Schizoaffective disorder, a chronic psychotic condition which can substantially impair cognitive functioning as well as adversely affect his ability to form a specific intent to kill and be conscious of that intent.[4]

6. Mr. Kuzmanko's condition is manifested by chronic hallucinations and delusio [as] well as pathological paranoia in the extreme.

7. His relevant history and the results of the physical and neuropsychological performed at Mayview reveal the presence of auditory hallucinations, delusions paranoia as described commencing in the patient's youth. Neuropsychological testing in particular noted the patient's ability to correctly apprehend reality to be 'tenuous', despite his being medicated with antipsychotic agents at the time of testing.

Dr. Bernstein, despite having never examined appellant, averred he would have been available and willing to testify at appellant's trial.

While counsel for appellant opted not to put on evidence of a diminished capacity defense, it is clear the defense theory of the case was appellant "lost control" and acted in a fit of rage, and therefore lacked the requisite specific intent for first degree murder (T.T., pp. 170–172). Such an argument, however, does not support a diminished capacity defense in Pennsylvania. As stated by our Supreme Court in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982):

Defendant in the instant case makes the same contentions as were made in the aforesaid cases, but instead of calling himself a mental defective or a sexual pervert, or some kind of psychopath, or that he had an irresistible impulse, he contends that his is a case of 'diminished responsibility.' By whatever name psychiatrists, or doctors or lawyers call it, an inability to control one's self under certain circumstances is legally insufficient to justify an acquittal of murder, or a reduction of a first degree murder killing to [a murder of a lesser] degree.

. . .

The doctrine of 'irresistible impulse' or in the modern psychiatric vernacular 'inability to control one's self', *whether used to denote legal insanity, or as a device to escape criminal responsibility for one's acts or to reduce the crime or its degree, has always been rejected in Pennsylvania.*

. . .

*Such a theory or philosophy would soon transfer the punishment of criminals from Courts to psychiatrists and would inevitably result in a further breakdown of law enforcement and eventual confusion and chaos. Fortunately our cases are opposed to such an undesirable result.*

*Id.* at 34, 454 A.2d at 946 (emphasis in original), *quoting Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A.2d 687 (1971). We have reviewed the record and determined the above-described information would have been irrelevant to appellant's defense and inadmissible at trial. While it is the duty of the lawyer to investigate the circumstances of the case, counsel is required to pursue only that information which he knows or has reason to know would be helpful to the defense. *Commonwealth v. Fierst*, 423 Pa.Super. 232, 245, 620 A.2d 1196, 1204 (1993).

"The Pennsylvania Supreme Court has consistently held that expert psychiatric testimony is admissible to negate the specific intent to kill which is essential to first degree murder." *Commonwealth v. Anderson*, 410 Pa.Super. 524, 529, 600 A.2d 577, 580 (1991),

---

4. As noted by the Commonwealth, the established medical research makes no suggestion impairment of cognitive functioning generally exists where there is a diagnosis of a schizoaffective disorder. *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Disorders*, Fourth Edition, Washington, D.C., American Psychiatric Association, 1994 (pp. 273–315).

*alloc. denied,* 531 Pa. 644, 612 A.2d 983 (1992). " '[P]sychiatric testimony relevant to the cognitive functions of deliberation and premeditation is competent on the issue of specific intent to kill. Thus psychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent.' " *Id., quoting Commonwealth v. Weinstein,* 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982). As detailed below, the Supreme Court has distinguished between those mental disorders which are cognitive in nature and those which are not.

The Commonwealth argues the evidence presented in the affidavits properly was dismissed by defense counsel based upon the holding in *Commonwealth v. Brown,* 396 Pa.Super. 171, 578 A.2d 461 (1990). We agree. In *Brown,* this Court made the following observations:

> A defendant who raises a diminished capacity defense concedes general criminal liability, but challenges his capacity to premeditate and deliberate at the time of the criminal act. *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976). It is an extremely limited defense and psychiatric testimony is only competent 'on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Where ... it does not, it is irrelevant and hence inadmissible.' *Commonwealth v. Weinstein,* 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982). *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Furthermore, **personality disorders or schizoid or paranoid diagnoses are not relevant to a diminished capacity defense.** *Id.*

*Id.,* at 181, 578 A.2d at 466 (emphasis added).

 Additionally, appellant challenges counsel's failure to develop the evidence appellant was intoxicated at the time of the murder. Appellant's father stated in his affidavit appellant appeared to be intoxicated prior to the murder. The Mayview Report suggests only the possibility appellant had a substance abuse problem. Evidence of voluntary intoxication or drugged condition may be used to reduce murder from a higher degree to a lower degree but to do so appellant must prove he was overwhelmed to the point of losing his faculties and sensibilities. *Commonwealth v. Breakiron,* 524 Pa. 282,, 571 A.2d 1035, 1041 (1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990). *See also Commonwealth v. Reiff,* 489 Pa. 12, 15, 413 A.2d 672, 674 (1980).

The Commonwealth responds by citing appellant's ability to clearly recall the events of the murder and recount them to police. Moreover, appellant's statement to police was he was not abusing drugs or alcohol at the time of the murder. The record is devoid of any evidence defense counsel should have believed otherwise. "In order to prove an ineffectiveness claim for failure to raise a diminished capacity defense, the defendant must show that there was a basis for the defense and that counsel knew of the basis." *Uderra, supra,* at ——, 706 A.2d at 340. Once again, counsel is under no obligation to pursue matters irrelevant and unhelpful to his client's defense. *Fierst, supra.*

Based upon the foregoing, it is apparent appellant's ineffective assistance of counsel claim fails for lack of merit. The January 14, 1997 judgment of sentence is affirmed.

Judgment of sentence affirmed.