J-S34001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JULIAN BRYANT | |
| Appellant | No. 1828 WDA 2012 |

Appeal from the Judgment of Sentence October 29, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010073-2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                          **FILED AUGUST 13, 2014**

Julian Bryant appeals from the judgment of sentence imposed October 29, 2012, in the Allegheny County Court of Common Pleas.  Bryant was sentenced to a term of 20 to 40 years' imprisonment after a trial court, sitting without a jury, found him guilty of one count of attempted murder and two counts of aggravated assault.[1]  On appeal, Bryant challenges the sufficiency of the evidence supporting his conviction of attempted murder. For the reasons below, we affirm.

The facts underlying Bryant's arrest and conviction are aptly summarized by the trial court as follows:

> On the afternoon of June 18, 2011, the defendant, Julian Bryant, fired six shots, wounding Kareem "Moose" Howard.  The

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), and (a)(4), respectively.

victim, Mr. Howard, sustained three gunshot wounds to his buttocks, one to his arm, one to his hip, and one to his ear. The incident occurred at approximately 1:20 p.m. near the intersection of Frankstown Avenue and North Homewood in the City of Pittsburgh, Allegheny County, Pennsylvania.

[Bryant] had known Mr. Howard for approximately five years. The two were good friends. Mr. Howard referred to [Bryant] as "Juls" or "bro." Mr. Howard was involved with [Bryant's] sister, Lateesha Bryant, and is the father of two of her children.

On the day of the incident, Mr. Howard testified that [Bryant] crossed the street to approach him and appeared "raged." [Bryant] then opened fire on him at a distance of "not quite" 20 feet after Mr. Howard had pulled a gun on Ms. [Bryant] during a dispute over the custody of their children.

Witness John Turner, the owner of a barbershop near the incident, heard a number of shots fired and then saw Mr. Howard, whom he knew, laying on the ground. Mr. Howard was shot four (4) times, falling to the ground, and in attempting to escape, was shot another two times while crawling away. Fired at point blank range, one shot came close to Mr. Howard's head, breaking an earring that he was wearing and damaging the ear. While crawling away, Mr. Howard picked up a Smith and Wesson 9mm semi-automatic pistol and returned fire in the direction of the fleeing [Bryant]. As a result of the incident, Mr. Howard was hospitalized for about eleven days, spending the first four in a coma. Among other injuries, he sustained a fractured pelvis, severe damage to the nerves of his right leg, and had to undergo three surgeries.

While en route to the scene of the incident, Detective Robert Shaw testified that at approximately 2:24 p.m. he received a report that a man had been hospitalized with a gunshot wound to the leg. The man in the hospital was [Bryant]; the 9mm bullet in his leg matched the Smith and Wesson pistol allegedly used by Mr. Howard upon returning fire.

Trial Court Opinion, 12/2/2013, at 2-3 (footnote and record citations omitted).

Bryant was subsequently arrested and charged with one count each of attempted murder and persons not to possess firearms,[2] and two counts of aggravated assault. He proceeded to a bench trial in June of 2012. On June 12, 2012, the trial court granted a judgment of acquittal on the weapons offense, but returned a verdict of guilty on the remaining charges. Bryant was sentenced, on October 29, 2012, to a term of 20 to 40 years' imprisonment for the charge of attempted murder. The remaining aggravated assault convictions merged for sentencing purposes, and this timely appeal followed.[3]

The sole issue Bryant raises on appeal challenges the sufficiency of the evidence supporting his conviction of attempted murder. In particular, he contends the evidence failed to establish that he possessed a specific intent to kill Howard when he shot him six times. Rather, he argues, the evidence established that he only intended to scare Howard for "pulling a gun" on Bryant's sister. Bryant's Brief at 15. Indeed, he contends that "[i]f [he]

_____

[2] 18 Pa.C.S. § 6105(a)(1).

[3] On December 17, 2012, the trial court ordered Bryant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Thereafter, on January 2, 2013, Bryant's counsel filed a petition for extension of time to file a Rule 1925(b) statement since the notes of testimony from his trial had not yet been transcribed. The trial court granted the petition, and, on June 12, 2013, Bryant filed a Rule 1925(b) statement. The trial court subsequently filed an opinion on December 2, 2013.

wanted to kill Howard when he was standing directly over him, he could have easily done so." *Id.*

Our review of a challenge to the sufficiency of the evidence is well-settled:

> A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

> Our Supreme Court has instructed:

>> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

> *Commonwealth v. Ratsamy,* 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013).

Here, Bryant challenges only his conviction of attempted murder.

Under the Pennsylvania Crimes Code, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). If a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder. **Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa.Super.2003) (citation omitted); 18 Pa.C.S.A. §§ 901, 2502. The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." **Commonwealth v. Gilliam**, 273 Pa.Super. 586, 417 A.2d 1203, 1205 (1980). The Commonwealth may establish the mens rea required for first-degree murder, specific intent to kill, solely from circumstantial evidence. **Commonwealth v. Schoff**, 911 A.2d 147, 160 (Pa.Super.2006).

**In re R.D.**, 44 A.3d 657, 678 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012). Moreover, "[s]pecific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Uderra**, 706 A.2d 334, 338 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999).

Here, Bryant acknowledges that a specific intent to kill may be inferred when a defendant shoots a victim in a vital part of his body. He argues, however, that the inference is not mandatory,[4] and, under the particular

---

[4] **See Commonwealth v. Hill**, 511 A.2d 171, 178 (Pa. Super. 1986) (stating that "[w]hen evidence is introduced to overcome or rebut this presumption, the question of defendant's intent becomes one for the triers of fact … [who may] consider the presumption along with all other credible evidence presented on the issue of intent.").

- 5 -

facts of this case, "should not be available." Bryant's Brief at 14. Indeed, Bryant contends the evidence established that his intent was simply to "scare Howard and warn him … [to stop] threatening Mr. Bryant's sister []." *Id.* at 15. Further, he claims:

> The shots to the buttocks, leg, and arm [were] all to non-vital parts of Howard's body. The one shot that was deflected by Howard's earring was in the pavement next to Howard. If Mr. Bryant wanted to kill Howard when he was standing directly over him, he could have easily done so. Instead, his bullet was fired into the pavement *next to* the victim's head.

*Id.* at 15.

However, Bryant's analysis of the evidence views the facts in a light most favorable to him, and not to the verdict winner, as is required in a sufficiency of the evidence claim. ***See Thomas***, ***supra***. Here, the evidence established that Bryant fired four shots at Howard, from less than 20 feet away, and, after Howard collapsed on the ground, fired two more shots, one of which was near Howard's head and damaged his ear. ***See*** N.T., 6/11-12/2012, at 26-27, 38-40. Indeed, as the trial court observed in its opinion: "That the [v]ictim was not killed by the six shots, singularly or in tandem of one another, is simply good fortune." Trial Court Opinion, 12/2/2013, at 5. Therefore, while an inference of Bryant's specific intent to kill was not required, it was permissible and reasonable under the facts of this case. Accordingly, Bryant's challenge to the sufficiency of the evidence fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/13/2014</u>