J-S57026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EUGENIO JOVEL TORRES | |
| Appellant | No. 150 EDA 2015 |

Appeal from the PCRA Order December 19, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0003002-2008

BEFORE: MUNDY, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.: **FILED OCTOBER 21, 2015**

Eugenio Jovel Torres appeals, *pro se*,[1] from the order entered December 19, 2014, in the Court of Common Pleas of Northampton County, denying him relief on his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*. In this timely appeal, Torres raises three issues. He claims the PCRA court erred in determining trial counsel was not ineffective for preventing Torres from testifying at trial, and for failing to object to crime scene photographs as being inflammatory and prejudicial. Additionally, Torres argues PCRA counsel was ineffective for failing to seek relief on the basis of recanted testimony of Commonwealth trial witness,

---

[1] Torres' appointed counsel filed a **Turner**/**Finley** no merit letter with the PCRA court and was permitted to withdraw from representation. **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

Damion Moses.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

Briefly, Torres was convicted of first-degree murder in the beating death of his girlfriend's three-year old son.  The evidence at trial showed the child suffered more than 90 injuries including a fractured skull, which led to cerebral edema and a lacerated liver which in turn caused to severe internal bleeding, both of which were contributing causes of death.  The child also had second-degree burns on his buttocks.  The burn pattern suggested hot water had been thrown onto the child while he was wearing his underwear.  Blistering occurred where cloth would have covered the child, but stopped where the elastic band would have repelled the water.  Wet underwear was found at the scene that supported this theory of how the child was scalded.  Blood spots were located throughout the apartment.  A white adult's belt, paper towel, a child's sock were also found in the apartment, all of which were blood stained.

Torres claimed he had no idea how the child was burned, but admitted the two had been taking a shower/bath, and the bath water sometimes became uncontrollably hot.  Torres claimed the child had inhaled some water while in the bath and stopped breathing.  As he tried to lift the child from the tub, he dropped him, causing the child to hit his abdomen on the toilet and his head on the floor.  He then called 9-1-1 and tried to follow the directions

for administering CPR, but might have injured the child more.[2] Despite his claim regarding being in the tub with the child, there was no water on the bathroom floor, nor any water on the living room floor where Torres claimed to have immediately taken the child to perform CPR. Paramedics and police testified that neither Torres nor the child was wet.

Finally, Damion Moses testified he saw Torres hit the child the morning of the child's death and that Torres told him the child was getting on his nerves.

After his conviction, Torres filed a direct appeal, raising 17 issues. He was denied relief in a comprehensive 65-page, unpublished decision, **Commonwealth v. Torres**, 68 A.3d 353 (Pa. Super. 2013) (unpublished memorandum), appeal denied, 79 A.3d 1098 (2013) (table). After our Supreme Court denied allowance of appeal, Torres filed this, timely PCRA petition, which was denied following a hearing. As noted, after the hearing, appointed counsel, Alexander J. Karam, Esq., filed a **Turner**/**Finley** no-merit letter and was allowed to withdraw as counsel. Torres filed this timely appeal.

Our standard of review for the denial of PCRA relief is well-settled.

---

[2] Torres' version of the events is taken from his recorded statement to the police. **See** Commonwealth Exhibit SC-1(A) (transcript of July 8, 2008 oral statement). He gave different versions to the child's mother, the paramedics, and the first police officers on the scene.

Our standard of review for an order denying post-conviction relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Perzel*, 116 A.3d 670, 671 (Pa. Super. 2015).

Further, in reviewing a claim of ineffective assistance of counsel, we are reminded:

[C]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has described the *Strickland* standard as tripartite by dividing the performance element into two distinct components. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987). Accordingly, to prove [plea] counsel ineffective, the petitioner must demonstrate that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs.

*Id*. at 671-72.

Torres' first issue is a claim the PCRA court erred in failing to find trial counsel was ineffective for not permitting Torres to testify on his own behalf at trial. Our review of the certified record demonstrates the PCRA court's determination denying Torres relief is based upon the record and is free of legal error. We base our ruling on the analysis provided by the PCRA court in its Pa.R.A.P. 1925(a) opinion of 4/22/2015 at pages 5-7. Our independent review of the certified record confirms that counsel had valid reasons for encouraging Torres not to take the stand – specifically cross-

examination of Torres would have exposed and highlighted the many versions of Torres' story. Because Torres' medical expert based his opinion on the last version Torres provided to the police, highlighting other versions would have cast serious doubt over the expert's conclusions. Moreover, the trial colloquy revealed that while Torres wanted to testify, he nonetheless chose to follow counsel's advice. Counsel did not force or threaten him into giving up his right to testify. Accordingly, the certified record belies Torres' underlying thesis that counsel did not permit him to testify. Torres is not entitled to relief on this issue.

Torres' second issue is a claim the PCRA court erred in failing to find trial counsel was ineffective for failing to challenge the admission of certain crime scene photos as being improperly inflammatory. First, it is unclear what photographs Torres is complaining were prejudicial. Torres' argument is titled as: "Was trial counsel ineffective for failing to move for suppression of prejudicial crime scene photographs?" **See** Appellant's Brief at 16. The PCRA court interpreted this to reference the photographs taken by Investigator Crouse of the apartment prior to the issuance of a search warrant. Testimony by trial counsel at the August 1, 2014, PCRA hearing addressed Crouse's photographs. However, the certified record demonstrates counsel did, in fact, challenge the introduction of those photographs. **See** Defendant's Brief in Support of its Omnibus Pretrial

Motions for Relief, 4/5/2010, at 16-19. Accordingly, counsel cannot have been ineffective for failing to file a motion that was, in fact, filed.[3]

However, in his appellate brief, Torres does not refer to the Crouse crime scene photographs that were the subject of testimony at the PCRA hearing. Rather, Torres refers to "three particularly graphic photographs of the victim in this case." Appellant's Brief at 16. Because the failure to suppress these photographs was not raised before the PCRA court, this issue has been waived.[4] Moreover, the issue of the three photographs was already litigated in Torres' direct appeal. *See Commonwealth v. Torres*, 68 A.3d 353 (Pa. Super. 2013) (unpublished memorandum) at *60-63.[5] Accordingly, Torres is not entitled to relief on this issue.

In his final argument, Torres claims PCRA counsel was ineffective for failing to seek relief regarding the alleged recantation of testimony by Commonwealth witness Damion Moses.[6] Our review finds no error in the PCRA court's denial of this claim.

_____

[3] We have reviewed the crime scene photographs and we see nothing inflammatory and/or improperly prejudicial about them.

[4] "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Cruz*, 71 A.3d 998, 1009 (Pa. Super. 2013); Pa.R.A.P. 302(a).

[5] This Court agreed that the three photographs were inflammatory but determined the valid evidentiary value outweighed any possible prejudice.

[6] Torres has again improperly changed the focus of the argument. At the PCRA hearing, Torres complained that trial counsel was ineffective for failing

*(Footnote Continued Next Page)*

At trial, Moses, an admitted drug dealer, testified he lived in the same building as Torres. On the day the child was killed, Moses went to Torres' apartment to try to obtain money from Torres. While at Torres' apartment, he witnessed Torres hit the child at least once. He also testified he saw the child curled up and whimpering. After his conviction, Torres was incarcerated in the same prison as Moses, who had been convicted of unrelated drug charges. The two men apparently met in the prison yard, at which time Moses allegedly told Torres he had lied at trial. Torres informed his mother, who then informed trial counsel. Trial counsel sent an investigator to the prison to interview Moses. Moses told the investigator he had lied at trial, but he was worried about perjury charges. Moses agreed to meet with counsel when he got out of prison.

Moses was eventually released from incarceration, but he never fulfilled his promise to meet with counsel to give a formal statement. Counsel attempted to contact Moses several times, including contacting Moses' probation officer. Despite these many attempts, Moses never spoke with counsel or in any way indicated a willingness to cooperate with Torres' PCRA claim. Trial counsel testified that as he had been unable to verify Moses' recantation, had been unable to gauge Moses' credibility by meeting with him, and had no indication that Moses was willing to cooperate, he

*(Footnote Continued)* —————————

to raise the issue of Moses' recantation. We will address the issue as raised before the PCRA court.

could not in good faith raise the issue of Moses' alleged recantation. The PCRA court determined counsel's explanation to be valid and not evidence of ineffective assistance. The certified record supports the PCRA court's determination and we find no error of law therein. Accordingly, Torres is not entitled to relief on this claim.

Order affirmed. Parties are directed to attach pages 5-7 of the PCRA Court's 4/22/2015 Opinion, regarding Torres' failure to testify at trial, in the event of further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/2015

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
: No. CR-3002-2008
:
v. :
:
EUGENIO TORRES, :
:
Defendant/Appellant :

### MEMORANDUM OPINION FILED PURSUANT TO Pa R.A.P. 1925(a)

Appellant, Eugenio Torres appeals from the order entered on December 19, 2014 denying his petition for relief filed pursuant to the Post-Conviction Relief Act (PCRA), 42 PA.CONS.STAT.ANN. §§ 9541-9546.

Torres was convicted, following an extensive jury trial held from November 8 – 15th, 2010, of first-degree murder for the death of his girlfriend's three-year-old son. In the death penalty phase, the jury was unable to reach a unanimous decision and as such, this Court sentenced Torres on November 17, 2010 to a term of life imprisonment, without the possibility of parole. Torres filed a direct appeal to the Superior Court which affirmed his judgment of sentence on February 1, 2013. *See Commonwealth v. Torres*, 68 A.3d 353 (Pa. Super. 2013). Torres's petition for allowance of appeal to the Supreme Court of Pennsylvania was denied on November 8, 2013. *See Commonwealth v. Torres*, 622 Pa. 750, 79 A.3d 1098 (2013).

On April 16, 2014, Torres filed a *pro se* PCRA petition. *See* Motion for Post Conviction Collateral Relief, 4/16/14. In his *pro se* PCRA petition Torres raised ineffectiveness of counsel claims. *Id.* This Court appointed Alexander Karam, Esquire to represent Torres in his PCRA petition. *See* Order, 4/30/14. On June 30, 2014, Attorney

1

Karam submitted a "No-Merit Letter" because his "review of the file, pleadings, briefs, transcripts and further investigation into the issues Torres raised in his PCRA petition", "lack merit to secure relief under the PCRA Act." *See* No-Merit Letter, 6/30/14, at 2. This Court held an evidentiary hearing on Torres's PCRA petition on August 1, 2014. On November 26, 2014, this Court issued an order and notice to dismiss with accompanying statement of reasons. *See* Order, 11/26/14 at 1-15. In our Order of November 26, 2014, we further granted Attorney Karam's request to withdraw. *Id.* Torres' PCRA petition was dismissed on December 19, 2014. *See* Order, 12/19/14. Torres filed a Notice of Appeal to the Superior Court on January 9, 2015. *See* Notice of Appeal, 1/9/15. On January 15, 2015, we issued an Order, pursuant to Pa.R.A.P. 1925(b) directing Torres to file his Concise Statement of Matters Complained of on Appeal within twenty-one (21) days. *See* Pa.R.A.P. 1925(b) Statement Order, 1/15/15. Torres complied with our Order and filed his Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on February 3, 2015. *See* Statement of Matters Complained of on Appeal Pursuant to Rule 1925(B), 2/3/15.

On appeal, Torres raises the following issues for the Superior Court's review:

1. Was trial counsel ineffective for failing to permit the Petitioner to testify on his own behalf?

2. Was trial counsel ineffective for failing to move for suppression of prejudicial crime scene photographs?

3. Was PCRA counsel ineffective for failing to file a motion for relief based on newly discovered evidence in the form of a retraction statement given by Commonwealth witness Damion Moss, who authored a statement recanting his trial testimony?

*Id.* at ¶¶ 1-3.

2

Preliminarily, we note that when reviewing an order dismissing a PCRA petition, the Superior Court must determine whether the ruling of the PCRA court is supported by record evidence and is free of legal error. **Commonwealth v. Burkett**, 5 A.3d 1260, 1267 (Pa. Super. 2010). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." **Commonwealth v. Carter**, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

Counsel is presumed to be effective. **Commonwealth v. Martin**, 5 A.3d 177, 183 (Pa. 2010). To overcome this presumption, Torres bears the burden of proving the following: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." **Id.** To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. **Commonwealth v. Perry**, 959 A.2d 932, 936 (Pa. Super. 2008). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. **Id.** Further, a PCRA petition must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness. **Id.**

In determining whether counsels' action was reasonable, the court does not consider "whether there were other more logical courses of action" counsel could have pursued, but simply examines whether counsels' decision had any reasonable basis. **Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007). Conversely, to merit relief, counsel's action, given all the other available alternatives, must be "so

3

unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Miller***, 431 A.2d 233, 234 (Pa. 1981).

A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Washington***, 927 A.2d at 594. "In the context of a PCRA proceedings, [the defendant] must establish that the ineffective assistance of counsel was of the type 'which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" ***Id***. The defendant must establish actual prejudice, or demonstrate that the alleged act of ineffectiveness falls within a narrow range of circumstances in which there is a presumption of prejudice. ***Commonwealth v. Reed***, 971 A.2d 1216, 1224-1225 (Pa. 2009).

As the Pennsylvania Supreme Court emphasized, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective" under the law in existence at the time of counsel's act or omission. ***Commonwealth v. Daniels,*** 963 A.2d 409, 429 (Pa. 2009) (quoting ***Strickland v. Washington***, 466 U.S. 668, 689 (1984)). "[A] defendant is not entitled to relief simply because the strategy is unsuccessful." ***Commonwealth v. Tippens***, 598 A.2d 553, 556 (Pa. Super. 1991) (*en banc*); ***accord Commonwealth v. Buksa***, 655 A.2d 576, 582 (Pa. Super. 1995). The Superior Court may affirm the order of a PCRA court on any grounds. ***Commonwealth v. Fisher***, 870 A.2d 864, 870 n.11 (Pa. 2005).

In his first issue on appeal, Torres claims that trial counsel was ineffective for failing to call him to testify at trial. The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. *Commonwealth v. Uderra*, 550 Pa. 389, 706 A.2d 334 (1998). In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. *Commonwealth v. Nieves*, 560 Pa. 529, 533, 746 A.2d 1102, (2000).

Counsel had sound tactical reasons for advising Torres not to testify on his own behalf at the time of trial. At the PCRA hearing trial counsel, Michael Corriere, Esquire testified that he, along with co-counsel, Bohdan J. Zelechiwsky, Esquire discussed Torres' testimony with him "prior to the trial, and in the prison, and you know, during the trial". *See* N.T., PCRA Hearing, 8/1/14 at 11. Torres "said he definitely did want to testify"; however, Attorney Corriere advised him that, it was not in his best interests strategically to testify. *Id.* at 11-12. In a pre-trial order, this Court in a favorable ruling for the defense, suppressed a statement made by Torres at the Wilson Borough Police Department on July 8, 2008 as the Commonwealth violated *Miranda* during Torres' custodial interrogation. However, after Torres was charged with criminal homicide, he waived his *Miranda* rights prior to interrogation and provided a statement on July 9, 2008 where he gave what counsel called "a very clear rendition of the facts." *Id.* at 12. In explaining the rationale for advising Torres not to testify, Attorney Corriere testified as follows:

5

We believed if the Common Pleas allowed that evidence to be used for the truth, and in fact it was the evidence that our experts utilized in formulating their opinions to provide Mr. Torres with a defense to the three main injuries to the child, which obviously were the head injury, number two was to the liver lacerations and the stomach, and to the burns. So Mr. Torres' testimony to the police were relied upon by our experts. Mr. Torres had the advantage of not being cross examined by Mr. Houck.

At the time Mr. Torres gave a statement to the police, they were trying to extract a statement. So they were not as adversarial as Mr. Houck, I believe, would have been. And they did not have all of the information.

The investigation was on-going, it wasn't complete. There were a number of facts that the police just didn't have at that time in their possession to ask Mr. Torres about.

We told him that if he were to testify, we were sure Mr. Houck would make a list of all of the pieces of evidence that Mr. Torres would not be able to say or not respond to say how certain things were found in the apartment.

And we felt that if he did testify, the jury was going to come back and it was going to damage his credibility. We felt that the best case scenario for Mr. Torres was that he not take the stand.

*Id*. at 12-13. Torres had "multiple discussions" with counsel about testifying during the trial as well. According to Attorney Corriere, "[Torres] was not saying yes or no, but he said he would like to speak to his mother." *Id*. at 13. Torres was given the opportunity to speak with his mother alone so that counsel did not make Torres "feel like [they] were pressuring him as to what he wanted to do." *Id*. at 14. Torres and his mother had a private conversation in the interview room. Torres's mother, Debra Medina testified at the PCRA hearing that she spoke with trial counsel for her son Torres and was worried "he could get the death penalty" if he testified. *Id*. at 43. She "begged [her] son not to testify." *Id*. at 43. After speaking with his mother, Torres communicated directly to Attorney Corriere that "he wasn't really happy, but he would follow [their] advice and not take the witness stand." *Id*. Attorney Corriere adamantly stated that in no way did he

6

force him to testify. *Id.* Attorney Corriere and Attorney Zelechiwsky strongly urged Torres not to testify and both believe that "he made the right move". *Id.* at 15.

Accordingly counsel in no way interfered with Torres's right to testify nor did counsel give specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. Counsel's advice was clearly sound in this case and as such, he cannot be deemed ineffective.

In his second issue raised on appeal, Torres argues that trial counsel was ineffective for failing to file a motion to suppress the photographs taken from the crime scene. This claim has no arguable merit as the record belies this argument. Trial counsel filed a comprehensive omnibus pretrial motion which included a motion to suppress the photographs of the crime scene included in the receipt inventory for the search warrant. In our exhaustive opinion wherein we denied Torres's motion to suppress, we stated the following:

> Turning to the challenged photographs, Officer Siegfried testified that he had observed everything in the photographs during his walk-through. It follows that these photographs, which depict only what Officer Siegfried had lawfully observed in plain view, are not the product of an illegal search.

*See* Opinion, 8/26/10, at 38 (citing *Commonwealth v. Witman*, 750 A.2d 327, 338 (Pa. Super. 2000)). Thus, the plain view exception to the warrant requirement was applicable. Furthermore, this issue was previously litigated on direct appeal and as such, it is waived. Accordingly, counsel cannot be deemed ineffective for failing to do something which he did and advocated well for on behalf of Torres. Simply because Torres was unhappy with the outcome of his motion to suppress the photographs or the

7

Superior Court's order affirming his judgment of sentence is not an arguable claim for ineffectiveness of counsel under the PCRA. Accordingly, this claim must fail.

In his last claim, Torres argues that PCRA counsel was ineffective for failing to file a motion for relief based on newly discovered evidence in the form of a retraction statement given by Commonwealth witness Damion Moses, who authored a statement recanting his trial testimony. *See* Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), 1/6/15 at ¶ 3. While Torres categorizes his as a claim of ineffective assistance of PCRA counsel, at the time of the PCRA hearing, Torres argued that *trial counsel* was ineffective in failing to pursue, by the filing of a motion, the taint of Commonwealth witness, Damion Moses's testimony. While this issue was not raised in Torres's PCRA petition, this Court heard testimony on this ineffectiveness claim at the time of the PCRA hearing.

Specifically, Torres avers that Damion Moses admitted to the private investigator while in state prison that he lied under oath at trial. Damion Moses testified on behalf of the Commonwealth that he "went up to the apartment" where Torres "was alone with the child after Lauren Anderson had left to go to work" and that Torres "was really mad, [Damion Moses] saw him smacking the child, the child was screaming, and he said he was going to take the child in the bathroom." *See* N.T., PCRA Hearing, 8/1/14, at 22. According to Attorney Corriere, Damion Moses's testimony was "damaging to [Torres] in the sense that he was confirming that [Torres] was abusing the child before the child died, and was verifying some of those injuries to the child." *Id.* at 22-23. Attorney Corriere had the benefit of cross-examining Damion Moses at the time of trial as to his veracity. *Id.* at 23.

8

Attorney Corriere testified at the PCRA hearing that Debra Medina, Torres's mother, contacted him in May or June 2012 and "advised [him] that she believed that Damion Moses had recanted his testimony." *Id.* at 22. Torres "had conferred to her that Mr. Moses was now saying he would help [Torres] out, that he lied at trial and he was ready to do the right thing." *Id.* at 24. Attorney Corriere immediately contacted his private investigator, Rod Devine, and directed him to go to state prison to take a statement. *Id.* The private investigator met with Damion Moses in state prison and prepared a report for Attorney Corriere. *Id.* at 25. The report indicated that "[Damion Moses] acknowledged that he was not truthful at trial. That he never saw [Torres] hitting the child. That he testified falsely, essentially, because he had a revenge or vendetta because of some kind of drug issue with selling drugs and that what he said at trial was not truthful." *Id.*

Attorney Corriere evaluated the credibility of Damion Moses's statement to the private investigator. Of concern was that "the report indicated that [Damion Moses] and [Torres] had some conversation in the prison yard." *Id.* Attorney Corriere questioned whether Damion Moses really wanted to do the right thing, or whether he was "saying that because he is having contract with [Torres] and he wants to keep the peace, so to speak." *Id.* at 26. The report further indicated that Damion Moses was reluctant to speak with the private investigator because he was concerned about perjury. This "raised [a] red flag" to Attorney Corriere about Damion Moses's willingness to cooperate. *Id.* More importantly, before Attorney Corriere filed a motion and presented it to the Court he needed to meet with him "to make sure [Damion Moses] understood what [he] was going to be asking of him and that he was going to cooperate." *Id.* Damion Moses was

ready to be released from state prison "within thirty days or so" so "once he got out of prison, [Attorney Corriere] instructed his investigator to talk to his probation officer." *Id.* The private investigator "went out multiple times to [Damion Moses's] apartment" left cards and messages to call, knocked on the door; however "never had any further contact with [Damion Moses]." *Id.* at 28. Attorney Corriere "gave it a couple of months" but he never heard from Damion Moses again. In explaining his rationale to this Court for not pursuing a motion for newly discovered evidence on Torres's behalf, Attorney Corriere stated the following:

> I just felt in good faith if I didn't – if I couldn't interview him and know he was going to be cooperative, I felt I didn't have enough to proceed to Court. All he had to do was take the Fifth. I couldn't impeach him. I couldn't use what he told the private investigator. That is something where he would have to come in and testify in front of Judge Zito and say he lied, for that to even go anywhere.

> I just felt at that point I didn't have a cooperative witness and I was a little skeptical about the whole thing now that he is out of prison. Why isn't he cooperative? He was all ready to cooperate when he was in prison, he is not around [Torres] anymore, why is he not willing to come up and step up to the plate if he, quote, wants to do the right thing? I wasn't sure.

> I didn't feel it was appropriate to file a motion representing something in Court without me saying at least I have a witness coming representing what I think he's going to say.

*Id.* at 29-30.

Accordingly, it is evident that trial counsel had a reasonable basis for his actions in not pursuing a motion on the grounds of newly discovered evidence. Damion Moses was not a strong witness. Attorney Corriere impeached him on cross-examination on his delay in cooperating with the police, his *crimen falsi* convictions, and his occupation as a heroin dealer. Damion Moses's credibility was minimal and his contribution to the Commonwealth's case was questionable at best. Damion Moses's testimony was not

10

essential to the verdict. The jury could have easily convicted Torres of the charges without Damion Moses's testimony. For these reasons, we discount the impact, if any Damion Moses's prison recantation would have had on a possible PCRA claim, even if Damion Moses would have followed-up with Attorney Corriere upon his parole to aid Torres in pursuing this claim. As such, this claim must fail.

According, this Court's Order of December 19, 2014 dismissing Torres' PCRA petition should be affirmed on appeal as all of his issues lack arguable merit.

BY THE COURT:

LEONARD N. ZITO, S.J.

DATE: April 22, 2015

11