J-S47014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
           :          PENNSYLVANIA
           :
        v.            :
           :
           :
DOUGLAS PRESTON SMITH        :
           :
       Appellant      :   No. 1335 MDA 2018

Appeal from the Judgment of Sentence Entered December 17, 2013
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002675-2010

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:         **FILED OCTOBER 23, 2019**

Appellant, Douglas Preston Smith, appeals from the December 17, 2013 Judgment of Sentence entered in the Cumberland County Court of Common Pleas following his conviction of Third-Degree Murder.[1]  After careful review, we affirm.

The relevant facts and procedural history, as gleaned from the record, including the trial court's January 14 2016, and February 4, 2019 Opinions, are as follows.  On December 4, 2001, a man found the decomposing body of Tanya Myers (the "victim") in a wooded area off Pennsylvania Route 34 in South Middleton Township, Cumberland County.  An autopsy revealed that the victim had been beaten and strangled, and the coroner determined that the

---

[1] 18 Pa.C.S. § 2502(c).

victim's cause of death was blunt force trauma to the head. During the autopsy, the coroner removed a "significant quantity of semen" from the victim's throat.[2]

A forensic pathologist testified that the seminal fluid was likely deposited after the victim had died. Other Commonwealth experts, including analysts from the Pennsylvania State Police lab, concluded that, because the semen had been discovered in the victim's throat and because of the condition of the sperm cells in it, the seminal fluid had been deposited around the time of the victim's death.

In May 2005, after extensive investigation, experts matched the DNA from the seminal fluid found in the victim's throat to Appellant using the combined DNA index system ("CODIS"). Consequently, police obtained a search warrant for more DNA from Appellant. Clinicians analyzed Appellant's blood, compared its components to the seminal fluid found in the victim's throat, and definitively confirmed that the fluid was Appellant's. The Commonwealth arrested Appellant on August 30, 2010.

Around the time of the victim's disappearance, Appellant had described to a friend, Arthur Herbert, how he had choked and beat the victim, explaining that they had "had a scuffle" and that he had "choked her out."[3] Appellant

_____

[2] N.T., 10/28/13, at 83.

[3] N.T., 10/29/13, at 88.

also told another friend, Melissa Milberry, that "something had happened" to the victim.[4]

On October 13, 2013, a jury convicted Appellant of the victim's third-degree murder. On December 17, 2013, the trial court sentenced Appellant to 20 to 40 years' incarceration.

Appellant filed a timely Post-Sentence Motion, which the trial court denied. Appellant timely appealed.[5] During the pendency of Appellant's appeal, on October 2, 2016, he filed a Post-Sentence Motion pursuant to Pa.R.Crim.P. 720(C)[6] with this Court requesting remand of the case to the trial court for an evidentiary hearing on after-discovered evidence. Appellant alleged that he had identified a potential *alibi* witness—Rajee Dancy[7]—a

---

[4] N.T., 10/29/13, at 100.

[5] In his first direct appeal, Appellant challenged the sufficiency of the evidence in support of his conviction and the court's Order denying his Motion to Modify Sentence.

[6] Pa.R.Crim.P. 720(C) provides that "[a] post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). The comment to Rule 720 states that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for remand to the trial judge[.]" Pa.R.Crim.P. 720, Comment.

[7] Appellant affixed to his Motion for Remand an affidavit from Mr. Dancy in which Mr. Dancy attested that Appellant was always present at the halfway house in November and December 2001, and, thus, could not have murdered the victim.

resident at the same halfway house[8] as Appellant at the time of the victim's murder. On December 16, 2016, this Court granted Appellant's Motion, remanded this matter with instructions, and relinquished jurisdiction. *See Commonwealth v. Smith*, No. 1977 MDA 2015 (Pa. Super. filed Dec. 16, 2016) (unpublished memorandum).

Upon remand, the trial court scheduled the hearing on Appellant's after-discovered evidence claim for March 3, 2017.[9] On February 23, 2017, Appellant requested a continuance of the hearing, which the trial court granted until May 8, 2017.

On May 2, 2017, six days before the scheduled hearing, Appellant filed a Petition to Request Unitary Review on Direct Appeal. In his Petition, Appellant explained that, in preparing for the hearing on his after-discovered evidence claim, his counsel discovered numerous meritorious ineffective assistance of counsel claims. Petition, 5/2/17, at ¶ 10. Appellant argued that logic and judicial economy dictated that the court consider his overlapping ineffectiveness and after-discovered evidence claims in a unitary appeal. *Id.* at ¶ 17. The Commonwealth did not object to Appellant's request for unitary review.

---

[8] The halfway house was Capitol Pavilion.

[9] On January 26, 2017, the trial court permitted Appellant's counsel to withdraw and appointed new counsel, Attorney William Braught to represent Appellant.

On May 5, 2017, the trial court granted Appellant permission to pursue unitary review of his ineffectiveness claims,[10] and continued the impending hearing on Appellant's after-discovered evidence claim.[11]

On January 24, 2018, and January 26, 2018, the lower court held a hearing on Appellant's ineffective assistance of counsel and after-discovered evidence claims, after which it directed the parties to file Briefs in support of their positions.[12]

---

[10] In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), the Pennsylvania Supreme Court explained the two exceptions to the general rule that claims focusing on counsel's performance should await collateral review: (1) if the ineffectiveness is apparent from the record and meritorious such that immediate consideration best serves the interests of justice; or (2) if there is good cause shown the defendant knowingly and expressly waives his entitlement to seek PCRA review of his conviction and sentence. **Holmes**, 79 A.3d at 763-64. Herein, the trial court found that Appellant had demonstrated "good cause" for unitary review and that he expressly waived his right to seek PCRA review of his conviction and sentence. Trial Ct. Op., 2/4/19, at 1 n.1.

[11] The court also directed counsel to file a PCRA Petition. Such an instruction, however, was improper as the PCRA provides for collateral relief only to a defendant whose judgment of sentence has become final. **See** 42 Pa.C.S. § 9545(b)(1) (explaining that a PCRA Petition shall be filed within one year of the date the judgment becomes final). Given the procedural posture of this case, *i.e.* this Court's remand for consideration of his Rule 720 Motion, at the time of the court's May 5, 2017 Order, Appellant's Judgment of Sentence had not yet become final.

Appellant nonetheless complied with the court's Order and filed a PCRA Petition on August 21, 2017, and an Amended Petition on December 22, 2017, in which he developed his ineffective assistance of counsel claims.

[12] At the hearing, Appellant presented the testimony of Attorney Geoffrey McInroy, his trial counsel; Jessica Fulp and Particia Warren, two former employees of the halfway house in which Appellant resided at the time of the victim's murder; Kerry Houser, a Cumberland County Probation Officer

On July 17, 2018, the court denied Appellant relief. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the [] court erred in denying [Appellant] a new trial where:

    a. Trial counsel's advice that [Appellant's] prior felony drug conviction would be admissible if he were to testify was so unreasonable that [Appellant] did not and could not have made a knowing and intelligent decision not to testify at trial.

    b. Trial counsel's failure to adequately cross-examine numerous Commonwealth witnesses constituted ineffective assistance of counsel to the extent that there was a probability that the outcome of the trial would have been different absent the ineffectiveness of counsel.

    c. Trial counsel provided ineffective assistance of counsel when he failed to call numerous witness[es] on [Appellant's] behalf at trial[, t]he failure of which denied [Appellant] a fair trial.

    d. Trial counsel failed to object to irrelevant and prejudicial testimony offered by the Commonwealth. The failure to object to the testimony allowed the jury to hear about prior bad acts by [Appellant] and to make improper assumptions about [Appellant's] potential whereabouts at or near the time of the killing.

    e. Trial counsel provided ineffective assistance of counsel when he failed to file a Pre-Trial Motion to suppress DNA evidence obtained from [Appellant] by means of an illegal search.

    f. Trial counsel provided ineffective assistance of counsel when he failed to file a Pre-Trial Motion to dismiss the

_____

assigned to the victim at the time of the victim's murder; Gwen Arnett, a friend of the victim; and Corporal George Cronin, a former corporal in the Pennsylvania State Police assigned to the Criminal Investigation Unit during the investigation into the victim's murder.

- 6 -

charges due to the unjustifiable delay in filing the charges that resulted in exculpatory evidence being lost or destroyed during the delay.

2. Whether the evidence was insufficient to support the conviction for third[-]degree homicide?

Appellant's Brief at 8-9.

In his first issue, Appellant challenges the trial court's determination that his trial counsel, Attorney McInroy, was not ineffective. We are, thus, guided by the following well-settled precepts in reviewing the trial court's decision.

The law presumes counsel has rendered effective assistance, and to rebut that presumption, the petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. **Commonwealth v. Kohler**, 36 A.3d 121, 132 (Pa. 2012). "[T]he burden of demonstrating ineffectiveness rests on [the petitioner]." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, an petitioner must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the petitioner's ineffective assistance of counsel claim. **Commonwealth v. Jones**, 811 A.2d 994, 1002 (Pa. 2002). **See also Commonwealth v. Fears**, 86 A.3d 795,

804 (Pa. 2014) (concluding that an appellant's "failure to meaningfully discuss each of the three ineffectiveness prongs" renders the claim "waived for lack of development[]").

"Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Miller*, 819 A.2d 504, 517 (Pa. 2000) (citation omitted). A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued. *Id.* In addition, we note that counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Nolan*, 855 A.2d 834, 841 (2004) (superseded by statute on other grounds).

In his first sub-issue, Appellant claims that his trial counsel was ineffective for advising him not to testify at trial. Appellant's Brief at 17.

The decision of whether to testify on one's own behalf is ultimately the defendant's, made after full consultation with counsel. *Commonwealth v. Uderra*, 706 A.2d 334, 340 (Pa. 1998). In order to sustain a claim that counsel was ineffective for failing to advise the defendant of his rights in this regard, the defendant must demonstrate either that counsel interfered with his right to testify or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision as to whether to testify on his own behalf. *Id.* When assessing whether counsel's advice that a defendant not testify on his own behalf prejudiced the defendant, we consider only whether,

but for counsel's advice, the result of the waiver proceeding would have been different.[13] ***Commonwealth v. Walker***, 110 A.3d 1000, 1005 (Pa. Super 2015).

In support of this claim, Appellant argues that counsel advised him not to testify because: (1) Appellant's prior conviction for felony Possession With Intent to Deliver ("PWID") would be admissible at trial; and (2) Appellant had made prior inconsistent statements. ***Id.*** at 18-19. Appellant argues that these reasons were logically and factually incorrect. Appellant notes that, because PWID is neither a *crimen falsi* nor admissible for any other reason, it is "not possible" that counsel's advice that Appellant not testify was reasonable or designed to effectuate Appellant's best interests. ***Id.*** at 19. With respect to counsel's "prior inconsistent statement" rationale, Appellant argues that counsel's concern was "nonsensical" as the jury had already heard the inconsistent statements. ***Id.*** at 19-20. Appellant avers that, had he testified, he could have provided an explanation for the inconsistencies and proffered a defense to the charges. ***Id.*** at 20-21.

Appellant further argues that, but for counsel's ineffectiveness, the outcome of his waiver decision would have been different. He asserts that the trial court applied the wrong standard when it concluded that "even if trial counsel's advice was unreasonable, we do not believe that there was a

---

[13] We, thus, do not consider "whether the outcome of the trial itself would have been more favorable had the defendant taken the stand." ***Walker***, 110 A.3d at 1005.

reasonable probability that the outcome of the trial proceedings would have been different had [Appellant] testified." *Id.* at 22 (citing Trial. Ct. Op., 2/4/19, at 3). Appellant posits that the trial court should have considered whether, but for counsel's ineffectiveness, Appellant would have waived his right to testify, not whether the outcome of the trial would have been different. *Id.* (citing *Commonwealth v. Walker*, 110 A.3d at 1005.

At the January 2018, hearing, Attorney McInroy gave a number of explanations for advising Appellant not to testify at trial. He testified that he advised Appellant that testifying on his own behalf would not be in Appellant's best interests because: (1) Appellant's testimony was not necessary to advance his defense;[14] (2) he believed that testifying would be "hazardous for [Appellant] and his credibility;" (3) Appellant had a significant criminal history, which included a prior conviction of PWID and three Retail Theft convictions;[15] and (4) Appellant would not make a good witness because of his poor "storytelling" ability. N.T., 1/24/18, at 42, 48-50, 54. Attorney McInroy

---

[14] He explained that the defense strategy involved undermining the Commonwealth's theory of the case that Appellant deposited his semen in the victim's throat at the same time that he killed her. . N.T., 1/24/18, at 41-42.

[15] Appellant had three convictions of Retail Theft, 18 Pa.C.S. § 3129(a)(1), in 2008. Appellant does not dispute that Retail Theft is a crime involving dishonesty, a conviction of which is would be admissible for impeachment purposes. *See Commonwealth v. Vitale*, 664 A.2d 999, 1002-03 (Pa. Super. 1995) (listing theft, perjury, bribery, criminal trespass, and unauthorized use of a motor vehicle as examples of crimes involving dishonesty).

conceded that Appellant's PWID conviction was not a *crimen falsi*, but noted that the conviction was the reason that Appellant was residing in a halfway house at the time of the victim's murder—facts Appellant would have had to explain if he testified at trial. ***Id.*** at 49.

Our review of the Notes of Testimony indicates that Appellant has relied only on a portion, and not the totality, of Attorney McInroy's testimony, in support of his claim of error. Appellant has conveniently omitted any reference to the portions of Attorney McInroy's testimony that demonstrate that counsel considered carefully the multitude of factors that informed his decision to advise Appellant not to testify. When considering the totality of Attorney McInroy's testimony, the trial court concluded that counsel's advice was reasonable in light of Appellant's criminal record, his general lack of credibility, and that Appellant's testimony would not advance his defense, which rested exclusively on discrediting the Commonwealth's position that it was at the time of the victim's death that Appellant deposited his semen in the victim's throat. The court also noted that it colloquied Appellant at trial, and Appellant had indicated that he was acting of his own volition in opting not to testify.

We agree with the trial court's conclusion that counsel's concerns were legitimate and his advice was reasonably calculated to advance Appellant's interests.[16] Appellant is, therefore, not entitled to relief on his first sub-issue.

In his second sub-issue, Appellant claims that Attorney McInroy was ineffective when he failed to cross-examine adequately numerous Commonwealth witnesses, including Melissa Milberry, Arthur Herbert, Corporal George Cronin, Jeffrey Wagner, LeAnn Singley, Kathleen Brown, Shawna Evans Smith, Larry Smith, Charles Bast, and Oden Scott. Appellant's Brief at 23-27. Appellant avers that counsel offered no rational basis for his cross-examination strategy and but for counsel's ineffectiveness in this regard, the outcome of his trial would have been different. *Id.* at 27-29.

Preliminarily we note that, at the evidentiary hearing, the only witnesses about whose cross-examinations Appellant's counsel questioned Attorney McInroy were Melissa Milberry, Arthur Herbert, and Corporal George Cronin. Thus, Appellant has waived his claim that counsel ineffectively cross-examined witnesses Wagner, Singley, Brown, Evans Smith, Smith, Bast, and Scott. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

---

[16] Having found counsel's advice reasonable, we need not address Appellant's claim that the trial court applied the wrong standard when it considered whether the outcome of the proceeding would have been different if counsel's advice had been unreasonable.

With respect to his claim that Attorney McInroy ineffectively cross-examined Commonwealth witnesses Melissa Milberry and Arthur Herbert—two witnesses who testified at trial that Appellant had made inculpatory statements to them about the victim's death—Appellant complains that counsel ineffectively cross-examined them about Appellant's alleged incriminating statements. Appellant's Brief at 23-24. In particular, Appellant claims that he was not with the witnesses at the times they allege he incriminated himself to them—a fact that would have been revealed to the jury, thus undermining the witness's credibility, had Attorney McInroy cross-examined the witnesses thoroughly. *Id.* Appellant also faults Attorney McInroy for failing to impeach both witnesses about alleged prior inconsistant statements. *Id.* Appellant further avers that Attorney McInroy was ineffective because Attorney McInroy did not cross-examine Herbert after Herbert testified on direct examination that: (1) Appellant had told Herbert that he killed the victim by using her own arm to choke her and (2) in 2001 or 2002, Appellant was concerned that the police had his DNA, when the police did not possess Appellant's DNA until 2005. *Id.* at 24.

With respect to the cross-examination of Corporal Cronin—a Pennsylvania State Police officer who investigated the victim's murder—Appellant complains that Attorney McInroy did not effectively cross-examine him about investigation of the crime; in particular his lack of effort to obtain the phone records of the victim and Appellant, the implications of the lack of

footprints in the area of the victim's body, and Herbert's statement to him about the way Appellant described choking the victim. *Id.* at 24-25.

The trial court concluded that Appellant "failed to develop those claims at the evidentiary hearing." Trial Ct. Op., 2/4/19, at 5. The court noted that, although Appellant complained of counsel's failure to cross-examine effectively those witnesses, he did not demonstrate how counsel could have done so effectively or whether and how it would have made a difference in the outcome of his trial. *See id.* Our review of the Notes of Testimony confirms the trial court's apt conclusion that Appellant failed to prove that Attorney McInroy was ineffective in cross-examining these witnesses. In addition, in light of the overwhelming scientific evidence connecting Appellant to the crime, Appellant could not have established that, but for Attorney McInroy's conduct, the outcome of his trial would have been different. *See Commonwealth v. Saranchak*, 866 A.2d 292 (Pa. 2005) (holding that were evidence of guilt was so overwhelming, trial counsel's ineffectiveness failed the prejudice prong). Thus, Appellant's claim that Attorney McInroy ineffectively cross-examined witnesses Milberry, Herbert, and Cronin fails.

In his third sub-issue, Appellant claims that Attorney McInroy was ineffective when he failed to call numerous witnesses to testify at trial on his behalf. These witnesses include Kerry Houser, Gwen Arnett, Jessica Fulp, Patricia Warren, Rick Pickles, Daniel Piper, and Bradley Wilt. Appellant's Brief at 29.

"Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of, the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (citation omitted). To satisfy the prejudice prong of this analysis, a defendant "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 951 A.2d 1110, 1134 (Pa. 2008) (citations omitted).

"[W]e will not grant relief based on an allegation that a certain witness may have testified in the absence of an affidavit from that witness to show that the witness would, in fact, testify." *Commonwealth v. Khalil*, 806 A.2d 415, 422-23 (Pa. Super. 2002) (dismissing the appellant's claim that counsel was ineffective for failing to call certain witnesses because the appellant failed to provide sworn statements from the putative witnesses indicating that they were available and willing to testify or that counsel knew of their existence).

Appellant summarily asserts that each of the witnesses existed, was available and willing to testify, and that Attorney McInroy knew, or should have known, of each of them. Appellant's Brief at 29-30. He also asserts that the presumptive witnesses' testimony would have: (1) provided the jury with evidence of an alternative suspect; (2) informed the jury of Appellant's lack

of opportunity to commit the murder; (3) and called into question the time of the victim's death. *Id.* at 31-32.

Appellant did not, however, provide the trial court or this Court with affidavits from the putative witnesses indicating that they were available and willing to testify, that counsel knew of their existence, and verifying the substance of their testimony. Appellant's claim, thus, fails.

In his fourth sub-claim, Appellant asserts that trial counsel provided ineffective assistance by failing to object to evidence of Appellant's "bad character." Appellant's Brief at 32. In particular, Appellant complains that counsel should have objected to Melissa Milbery's testimony that Appellant "used drugs and that when he did so he 'on occasion, walked around the house with a gun or walked around and grabbed a knife.'" *Id.* Appellant asserts that this testimony prejudiced him because it portrayed him as violent when he used drugs. *Id.* at 33.

Appellant also claims that Attorney McInroy was ineffective when he failed to object to Oden Scott's testimony that challenged Appellant's alibi by implying that Appellant had not been present at Capitol Pavilion at the time of the victim's murder. *Id.* at 34. Appellant asserts that Scott's testimony was irrelevant because Scott did not work at Capitol Pavilion at the time of the crime. *Id.*

Appellant has not addressed whether trial counsel had a reasonable basis for choosing not to object to Scott's testimony. Appellant's failure to

address one of the three prongs of the ineffectiveness inquiry is fatal to this claim. **Jones**, 811 A.2d at 1102; **Fears**, 86 A.3d at 804.

With respect to Attorney McInroy's decision not to object to Milberry's testimony about Appellant's behavior when he is high, Appellant has not pleaded and proved that, but for counsel's alleged ineffectiveness, there is a reasonable probability that the outcome of Appellant's trial would have been different. **Fulton**, 830 A.2d at 572. Given these shortcomings, Appellant's fourth sub-issue fails.[17]

In his fifth sub-issue, Appellant claims Attorney McInroy was ineffective for failing to file a motion to suppress Appellant's DNA. Appellant's Brief at 34-35. Appellant alleges that this claim has arguable merit because: (1) police did not collect his DNA pursuant to any valid statute; and (2) police did not obtain his DNA pursuant to a valid search warrant or with his consent. **Id.** He claims that Attorney McInroy gave "no reason" for not filing a motion to suppress, and that the admission of this evidence prejudiced him because it "le[d] to the identification of [Appellant] as a prime suspect[.]" **Id.** at 35.

In the alternative, Appellant argues that he did not voluntarily consent to the collection of his DNA, because his consent was coerced with threats of being placed in restrictive housing. **Id.** at 35.

---

[17] Moreover, even if Appellant had properly pleaded this claim, Appellant would have been unable to prove that, but for counsel's alleged ineffectiveness, there is a reasonable probability that the outcome of his trial would have been different because of the uncontroverted DNA evidence that Appellant ejaculated into the victim's throat at the time of her death.

- 17 -

Appellant has mischaracterized Attorney McInroy's testimony at the hearing as giving "no reason" for not filing a motion to suppress. Attorney McInroy, in fact, explained his reasoning. Attorney McInroy testified that he "felt as though the motion was going to fail" and "it was my strategy not to unduly delay [Appellant's] trial any further" by filing a motion that would likely fail. N.T., 1/24/18, at 70-71. Appellant has not presented any argument that Attorney McInroy's proffered rationale did not have some reasonable basis designed to effectuate his interests. Because Appellant has failed to satisfy this prong of the ineffective assistance of counsel test, this claim fails. **Jones**, 811 A.2d at 1002.

In his final sub-issue, Appellant claims that Attorney McInroy provided ineffective assistance when he failed to file a pre-trial motion to dismiss the charges due to the Commonwealth's unjustifiable delay of nearly five years in filing them.[18] Appellant's Brief at 36. He asserts the delay caused the loss of valuable witness testimony and documents. **Id.** at 39.

A violation of a defendant's due process rights can occur if the Commonwealth excessively delays filing charges, the delay causes actual prejudice, and the delay was the product of intentional, bad faith, or reckless conduct by the Commonwealth. **Commonwealth v. Scher**, 803 A.2d 1204,

---

[18] The five years to which Appellant refers is the time between when the Commonwealth matched the semen found in the victim to Appellant and when it charged Appellant with the victim's murder.

1221-22 (Pa. 2002) (OAJC).[19]  In determining whether the Commonwealth violated the defendant's due process rights, the court must "examine all of the circumstances to determine the validity of the Commonwealth's reasons for the delay." *Id.* at 1221.

In order to prove prejudice, particularly with respect to the loss of documentary evidence or the unavailability of a witness, a defendant "must show that he[] was meaningfully impaired in his[] ability to defend against the [Commonwealth's] charges to such an extent that the disposition of the criminal proceedings was likely affected." *Id.* at 1222.  The defendant must also show that the lost evidence was not ascertainable through other means. *Id.*  Additionally, "a defendant who claims prejudice through the absence of witnesses must show in what specific manner the missing witnesses would have aided the defense." *Id.* at 1225.

"This Court recognizes that murder prosecutions often come to fruition after many years of investigation.  We do not intend to limit the power of the Commonwealth to prosecute a murder if and when an investigation yields new evidence after many years of inactivity." *Commonwealth v. Snyder*, 713 A.2d 596, 605 (Pa. 1998) (upholding an 11-year delay in charging).

---

[19] In *Scher*, the Pennsylvania Supreme Court determined that the defendant did not suffer a violation of due process where the Commonwealth did not file charges for 20 years. *Id.* at 1229-30.

Attorney McInroy testified at the evidentiary hearing that, although he had discussed filing a motion to dismiss with Appellant's prior counsel,[20] he ultimately determined that such a motion would essentially lack merit because the "delay was not of a great enough magnitude to have, in and of itself, prejudiced [Appellant]." N.T., 1/24/18, at 57. The trial court agreed with Attorney McInroy's assessment opining that

> [T]he Commonwealth did not delay maliciously. Rather it charged [Appellant] when it felt that it had ruled out all other suspects and had enough evidence to prove his guilt beyond a reasonable doubt. Even if the delay caused actual prejudice (we were satisfied it did not), [Appellant] did not show that the delay was the product of intentional, bad faith[,] or reckless conduct by the prosecution[.]

Trial Ct. Op. at 4.

Although Appellant has presented extensive argument in his Brief in support of the first prong of the ineffective assistance of counsel test, he has failed to present any argument regarding the second and third prongs of the test. In particular, Appellant failed to set forth any argument that Attorney McInroy's decision not to file a pre-trial motion to dismiss did not have some reasonable basis designed to effectuate his interests, or that, but for Attorney McInroy's course of conduct, there is a reasonable probability that the outcome of the challenged proceeding would have been different.

---

[20] The trial court initially appointed Appellant counsel from the Cumberland County Public Defender's Office on December 3, 2010, and Attorneys Charles P. Mackin, Jr., Linda S. Hollinger, and Diane Morgan appeared on Appellant's behalf from 2010 to 2013. On, May 6, 2013 Attorney McInroy entered his appearance on Appellant's behalf.

Accordingly, we conclude that Appellant has failed to demonstrate that Attorney McInroy was ineffective in declining to file a motion to dismiss.

In his final issue, Appellant purports to challenge the sufficiency of the evidence in support of his Third-Degree Murder conviction. Appellant's Brief at 42. Appellant has not set forth the elements of the offense, relevant controlling case law, or any argument. Rather Appellant "relies upon the Brief submitted by [appellate c]ounsel in support of his direct appeal prior to remand of this case to the [t]rial [c]ourt." *Id.*

Our Supreme Court has held that "incorporation by reference" is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief to the Court. *Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011)) (specifying that "our appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals, or briefs attached as appendices, as a substitute for the proper presentation of arguments in the body of the appellate brief"); *Pines v. Farrell*, 848 A.2d 94, 97 n.3 (Pa. 2004) (reliance on "briefs and pleadings already filed in this case" was "not a recommended form of advocacy"). The Rules of Appellate Procedure specifically require a party to set forth in his or her brief, in relation to the points of his argument or arguments, "discussion and citation of authorities as are deemed pertinent," as well as citations to statutes and opinions of appellate courts and "the principle for which they are cited." Pa.R.A.P. 2119(a), (b). Therefore, our appellate rules do not allow incorporation by reference of arguments contained in briefs filed in other

proceedings, as a substitute for the proper presentation of arguments in the body of the appellate brief. Appellant has, thus, waived this claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2019