J-A04038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FELIX ADORNO | : | |
| | : | |
| Appellant | : | No. 2566 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 14, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002642-2020

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                          **FILED JULY 03, 2024**

Appellant, Felix Adorno, appeals from the judgment of sentence following a jury verdict finding him guilty of murder of the first degree, conspiracy to commit murder, possessing an instrument of crime, and two violations of the Uniform Firearms Act.[1] He argues that the evidence was insufficient, his convictions were contrary to the evidence and the trial court's jury instruction on a permissive inference was erroneous. We affirm.

This appeal arises from the September 18, 2019, killing of Ivan Ortiz, who was at the Philadelphia home of his child's mother, Hillary Quezada Perez. Appellant, known by the nickname "Phil", and his co-defendant, Francisco "Mo" Ortiz, were visiting with Perez in her home at the time the victim came

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502, 903(c), 907(a), 6106(a) and 6108, respectively.

to the house and tried to get inside. They went outside to confront him. Appellant shot the victim in the chest. Once the victim fell to the ground, Ortiz used the same gun to shoot him four times in the back side of his body. Appellant and Ortiz fled the scene.

Appellant was arrested months later in New Jersey. He was tried alongside co-defendant Francisco Ortiz before a jury. At trial, the following testimony was elicited:

> Hillary Quezada Perez testified that she had previously been in a relationship with the decedent, Ivan Ortiz, and that she shared a one-year-old child with him. Perez testified that at the time of the decedent's death, she was in a relationship with Co-Defendant and Appellant was in a relationship with one of her friends. On the night of the murder, Perez was at her home with some friends and both Appellant and Co-Defendant when the decedent texted her that he was coming over and indicated that he had her house keys. The decedent arrived at her house at 451 Van Kirk Street in Philadelphia and proceeded to go back and forth from the front door to the back door, unlocking the doors, but not entering the building. Perez and her friends tried to plan how to get Appellant and Co-Defendant out of the house without them interacting with the decedent. At this time, she saw Appellant and Co-Defendant "going back and forth whispering." N.T. 6/8/2022, at 168-196.
>
> Eventually, Perez believed the decedent was at the front door and went to talk to him and drive him home, while Appellant and Co-Defendant went to exit out the back. When Perez got to the front door, she realized the decedent was not there and heard gunshots from the back of the house. She then went to the back door where the decedent fell in as she opened the door. The decedent had been shot and was bleeding. He told Perez, "You chose Mo over me." Perez then went outside and saw what she believed to be Appellant's vehicle driving away. She then went back inside and remained with the decedent until police arrived. *Id*. at 196-202.
>
> Philadelphia Police Officer Mark Wickizer testified that he was on duty in a police vehicle on September 18, 2019. Shortly after 1:00 a.m., he heard a call over his radio to respond to 451 Van Kirk

Street due to a report of a person with a gun at the back of the property. Upon arrival, Officer Wickizer was flagged down by a woman standing in the middle of the shared driveway between 451 Van Kirk Street and the house next to it. She said that a male was shot inside the house and pointed to the back door. Officer Wickizer noticed blood on the door and that the door was propped open. He entered and saw the decedent, Ivan Ortiz, laying on the floor at the door to the basement. *Id*. at 52-62.

Officer Wickizer testified that the decedent was on his back face-up, had "a lot of blood on his chest," and had significant blood pooling underneath his body. The decedent was nonetheless awake, coherent, and stated that he was dying and that his lungs were filling up. When asked by Officer Wickizer who had shot him, the decedent responded that he did not know. Medics arrived and took the decedent to the hospital where he subsequently died as a result of his wounds. Officer Wickizer remained at the scene and learned that there were three (3) women and three (3) children at the property. He testified that there were no men at the scene when he arrived and that he and another officer did not find any suspects in the house after they secured the property and searched it. *Id*. at 62-65.

After the decedent was taken to the hospital and the scene was secured, Perez went with the police to give a statement. At that time, she said that the only male at her home was someone named Carlos and she identified a photo of Co-Defendant as Carlos. About a month later, Perez returned to the police with an attorney to give a corrected statement. This time, she stated that both Appellant and Co-Defendant were at the house at the time of the murder. She testified that she had not been initially truthful with police because she was afraid. *Id*. at 203-209.

Philadelphia Police Officer Christopher Campbell, who was assigned to the Crime Scene Unit (CSU), testified that he arrived at the crime scene on September 18, 2019, at 2:56 a.m. Officer Campbell testified that CSU recovered four (4) cartridge casings and two (2) projectiles from the rear of 451 Van Kirk Street. He testified that all fired casings were from a 9mm Luger FC gun. *Id*. at 127-144. Philadelphia Police Officer Paul Ward, who was assigned to the Firearms Identification Unit (FIU), completed an examination of the recovered cartridge and projectiles. Officer Ward determined that all were fired from the same gun and the findings were consistent with all ballistic evidence originating from a Ruger 9mm. N.T. 6/9/2022, at 97-109.

- 3 -

Dr. Albert Chu, the acting Chief Medical Examiner for the Philadelphia Medical Examiner's Office, performed the post-mortem examination of the decedent. Dr. Chu found that the decedent had five (5) gunshot wounds: one (1) to the center of his chest, one (1) to the upper back, one (1) to the left side of the upper back, one (1) to the right lower extremity behind the knee, and one (1) to the left thigh. Dr. Chu determined that the decedent's cause of death was multiple gunshot wounds, and that the manner of death was a homicide. He also testified that the toxicology report for the decedent was negative. *Id*. at 46-71.

Angel Fernandez testified that the decedent was his cousin through his mother, Co-Defendant was his brother through his father, and Appellant was his cousin through his father. Fernandez testified that during the summer of 2019, including September, he hung out with Appellant and Co-Defendant nearly every day. Fernandez testified that the day after he was told of the decedent's death, around September 19, 2019, he was standing on the street with both Appellant and Co-Defendant by his aunt's house, near the 3400 block of E Street, at around 3:00 p.m., Fernandez had heard from a cousin that Appellant and Co-Defendant had something to do with the decedent's death, so he initiated a conversation asking them about it. *Id*. at 118-130.

Fernandez testified that Co-Defendant told him that the decedent had come to the house on Van Kirk Street while Appellant and Co-Defendant were there. Perez received a call from the decedent saying that he was outside and trying to get in and that he was aggravated that Co-Defendant was there. Co-Defendant and the decedent got into an altercation on the phone while the decedent was "knocking on the back door, the front door, the back door, the front door." Appellant and Co-Defendant got tired of sitting in the house and opened the door. The decedent came toward them with a weapon of some sort, which Appellant and Co-Defendant thought was either a gun or a stick. Appellant shot the decedent first, then Co-Defendant "came up and finished him." Fernandez testified that both Appellant and Co-Defendant told him that Co-Defendant had killed the decedent when he was down. Fernandez testified that Appellant had a Ruger 9mm in his possession at the time. Fernandez also testified that he was on probation at the time of the incident and when he cooperated with police, but that he did not receive any deals in exchange for his testimony. *Id*. at 130-151.

Philadelphia Police Detective Thorsten Lucke testified about a video that was recovered from a Van Kirk Street residence security camera and call detail records from a cell phone recovered from Perez. Detective Lucke testified and presented the video which captured the decedent walking toward 451 Van Kirk Street at 1:01 a.m., holding a shovel and a phone. There was then an 8-minute-and-59-second gap until the police appeared responding to the incident. Detective Lucke also testified that there were two phone calls around 1:00 a.m. between Perez's phone and Appellant's phone. These phone calls and their origins were consistent with Appellant being in the area of the crime scene at the time of the murder. N. T. 6/13/2022, at 21-67.

Carmen Martinez, the mother of the decedent, Ivan Ortiz, testified about her son and his relationship with Perez. She also testified that she went to 451 Van Kirk Street two (2) days after the decedent was killed with her other son, her nephew, and her brother. While there, Martinez's son and brother found "a bullet shell" in the yard. She testified that her brother alerted nearby police officers about the bullet. N. T. 6/8/2022, at 102-106.

The Commonwealth and counsel for Appellant and Co-Defendant stipulated that, if called to testify, Detectives Griffin and McLaughlin from the Homicide Unit Fugitive Squad would testify that Co-Defendant was arrested on February 24, 2020, and Appellant was arrested on April 1, 2020. Members of the United States Marshals Fugitive Task Force arrested Appellant inside his grandmother's residence in Carneys Point, New Jersey, where he was then transported and extradited to Philadelphia. N. T. 6/13/2022, at 104-105.

The Commonwealth entered two (2) self-authenticating certified records into evidence. The first record stated that pursuant to § 6103 of the Crimes Code, Appellant did not have a valid license to carry a firearm. Appellant also did not have a valid license to carry a firearm under the provisions of § 6109 of the Crimes Code, nor did he have a valid sportsman's firearm permit issued under the provisions of § 6106(c) of the Crimes Code. The second record stated that Co-Defendant did not have a valid license to carry a firearm under the provisions of § 6109 of the Crimes Code, nor did he have a valid sportsman's firearm permit issued under the provisions of § 6106(c) of the Crimes Code. Both records were stamped and sealed by the director of the Pennsylvania State Police and the custodian of records. *Id*. at 105-106.

Trial Court Opinion, 1-7.

The jury found Appellant guilty of murder in the first degree, conspiracy and weapons offenses.[2] N. T. 6/14/2022, 8-9. Following the verdict, the court moved directly to sentencing. After establishing the sentencing guideline ranges, and hearing argument from counsel, the court imposed the following concurrent terms of incarceration: life without possibility of parole on the murder conviction; two to four years on the conviction for carrying a firearm without a license; one to two years on the conviction for carrying a concealed firearm on the streets of Philadelphia without a license; and one to two years on the conviction for possessing an instrument of crime. *Id*., 15-23.

On June 23, Appellant filed a motion for new trial and arrest of judgment, *inter alia*, challenging the verdict as being contrary to the weight of the evidence. Motion for New Trial, 7-10; Trial Court Record, 133-145. The motion was denied on July 1, 2022. Order 7/1/22; Trial Court Record, 150. Due to a breakdown in court processes, Appellant did not receive notice of the order denying his motion, and was granted a *nunc pro tunc* appeal period on September 22, 2022. Order, 9/22/22; Trial Court Record, 152. Appellant filed a timely notice of appeal. Notice of Appeal, 10/6/22; Trial Court Record, 153.

---

[2] The jury also found co-defendant Ortiz guilty of murder of the first degree, conspiracy to commit murder, possessing an instrument of crime, and two violations of the Uniform Firearms Act. N.T. 6/14/22, 9-10. His judgment of sentence was affirmed by another panel of this Court. **See Commonwealth v. Ortiz**, 2313 EDA 2022, 2024 WL 2019453 (Pa. Super., filed May 7, 2024).

The trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal. He complied. The trial court submitted an opinion in accordance with Pa.R.A.P. 1925(a), explaining reasons for affirming the judgment of sentence. *See* Trial Court Opinion, 9-27. Appellant now asserts the following three issues in his brief:

(1) Were the verdicts of murder of the first degree (18 Pa. C.S.A. 2502), criminal conspiracy to commit murder (18 Pa. C.S.A. 903), firearm violations (18 Pa. C.S.A. 6106), Philadelphia firearm violations (18 Pa. C.S.A. 6108) and possessing an instrument of crime (18 Pa. C.S.A. 907) not supported by sufficient evidence and therefore should the verdicts be reversed? Was the evidence so conflicting and witnesses' testimony so contradictory and inconsistent and the physical evidence contradicted witnesses' testimony, thus making the verdicts not supported by sufficient evidence and based on speculation and should a new trial be granted?

(2) Were the verdicts of murder of the first degree (18 Pa. C.S.A. 2502), criminal conspiracy to commit murder (18 Pa. C.S.A. 903), firearm violations (18 Pa. C.S.A. 6106), Philadelphia firearm violations (18 Pa. C.S.A. 6108) and possessing an instrument of crime (18 Pa. C.S.A. 907) against the weight of the evidence? Was the evidence so contradictory, speculative and inconsistent that the verdicts of murder of the first degree and related charges, should shock the conscience of the Court and a new trial should be granted?

(3) Did [the trial court] err in instructing the jury that possessing a firearm without a license would be one item of circumstantial evidence on whether the Defendant had the[…] intent to commit the crime of murder as charged? (6/13 N.T. 235). Did such an instruction allow an improper inference or presumption of guilt for someone who possessed a firearm without a license and did this violate due process? Was there a timely objection and mistrial motion that was not transcribed? (6/13 N.T. 237). Did [the trial court] err in not granting a mistrial due to the improper instruction?

Appellant's Brief, 7-8.

When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner," and the evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." *Id*. It is the job of the finder of fact to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." *Id*.

Appellant's sufficiency challenge focuses on the lack of an eyewitness to the shooting itself and contends the record lacks "strong, acceptable, credible, non-speculative and non-contradictory evidence that [Appellant] did the killing." Appellant's Brief, 50. However, that is not the proper standard. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Eckrote*, 12 A.3d 383, 386 (Pa. Super. 2010). "[W]e will not disturb the jury's resolution of any conflict" in the testimony, because it is "[t]he jury, not this Court, … charged with the responsibility of evaluating the credibility of the witnesses." *Commonwealth v. Faulk*, 928 A.2d 1061, 1069 (Pa. Super. 2007).

"There are three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." **Commonwealth v. Jordan**, 65 A.3d 318, 323 (Pa. 2013) (*en banc*) (citing 18 Pa.C.S. § 2502(a)). "Specific intent as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body." **Jordan**, 65 A.3d at 323. The jury must determine whether the accused had such intent. **See id**.

Viewed in the light most favorable to the Commonwealth, as it must be, the evidence satisfied each of the elements of murder in the first degree. Appellant and Ortiz were at Perez's home on the evening that the victim was killed. Perez testified that Appellant and Ortiz were leaving by the back door while she was at the front door expecting to talk to the victim. Instead, she heard gunshots at the back door, and upon arriving there, the victim fell inside and Appellant and Ortiz were gone. Perez saw a car that looked like Appellant's driving away. This evidence strongly supports the jury's conclusion that Appellant and Ortiz were the shooters. Further, Fernandez testified at trial that Appellant and Ortiz both admitted to him that they shot the victim, and that Ortiz "finished" the victim using Appellant's firearm. The uncontroverted physical evidence also shows that the victim was shot a total of five times in various parts of his body – more than enough times to incapacitate him even had he been an initial aggressor. The jury was permitted to infer Appellant's intent to kill from the use of a deadly weapon, his unlicensed firearm, on a

vital part of the victim's body, his chest. *See Commonwealth v. Uderra*, 706 A.2d 334, 338 (Pa. 1998). Thus, the evidence was sufficient to sustain the jury's verdict on the murder count.

Appellant further contends that "if Mr. Fernandez is to be believed, his testimony" that Appellant and Ortiz thought the victim was coming at them holding a rifle or a stick "clearly indicate[s] that [Appellant] acted in self-defense." Appellant's Brief, 63. At most, this testimony only raises the possibility of self-defense, putting "the issue before the fact finder." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001). The burden was then on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014).

> The Commonwealth sustains this burden where the evidence shows: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety."

*Id*. The Commonwealth needed only to establish one of these three elements beyond a reasonable doubt to satisfy its burden of proof. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000). Here, the additional four gunshots fired by Ortiz at Appellant's prompting demonstrated that Appellant and Ortiz "used greater force than was reasonably necessary to protect against death or serious bodily injury." *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*) (holding that self-defense claim

rebutted where appellant used unreasonable force in stabbing victim 19 times). Appellant's claim "in the alternative" that he had a defense of mistaken belief self-defense also fails for the same reason. Appellant's Brief, 64. For that defense to be valid, all other principles of self-defense, including not having used excessive force, must be met. *Id*.; *Commonwealth v. Broaster*, 863 A.2d 588, 596 (Pa. Super. 2004).

With respect to the possessory offenses, Appellant argues that no one saw him in possession of a firearm. Appellant's Brief, 50-52. A witness heard a gun being fired at the back door of the house. Ballistics demonstrated that a gun had been fired at the back door of the house. Appellant admitted to Fernandez that he had a firearm that he shared with Ortiz to kill the victim. *See Commonwealth v. Robinson*, 817 A.2d 1153, 1161-62 (Pa. Super. 2003) (holding that testimony of a witness that appellant possessed a firearm is sufficient to prove possession even if the gun is never recovered). The finder of fact could reasonably infer that Appellant at a minimum had conscious dominion and control over the firearm used to kill the victim. *See Commonwealth v. Johnson*, 26 A.3d 1078, 1086 (Pa. Super. 2011) (factors for constructive possession).

Appellant raises no specific challenge to the sufficiency of the evidence of any element of criminal conspiracy, at most mentioning only that an "agreement" is necessary. An agreement was patently present where a gun was shared by the shooters.

Appellant's overarching sufficiency challenge is based on the "conflicting and contradictory" evidence in the record and such cases as **Commonwealth v. Karkaria**, 625 A.2d 1167 (Pa. 1993), **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976), and **Commonwealth v. Bennett**, 303 A.2d 220 (Pa. Super. 1973). Appellant's Brief, 52-61. This argument is not persuasive, however, as the case in which the evidence was found insufficient had discrepancies so pervasive that the corpus of the crime could not be reliably established. **Compare Karkaria**, 625 A.2d at 1171 ("Since there was no direct evidence of sexual intercourse" during the relevant time, "the jury … would have had to conclude … that the child had been forced to submit to sexual intercourse over 300 times, without ever feeling pain, without any physical evidence to support the contention … and without any specific recollection … as to a date certain"); **with Farquharson**, 354 A.2d at 551 (corpus of crime of murder definitively proven, evidence sufficient where, "although the [unreliable testimony] was crucial to the Commonwealth's case in that it was the only direct evidence [of the appellant's] participation in the conspiratorial design upon which liability is predicated, the Commonwealth was able to provide corroboration from a most impressive source, *i.e.*, the mouth of the appellant").[3] The discrepancies in this case were comparatively

_____

[3] The Superior Court decision cited by Appellant was limited by the Supreme Court. **See Farquharson**, 354 A.2d at 550 (limiting **Bennett** to where the party with burden of proof submits only evidence "so unreliable or contradictory as to make any verdict based thereon obviously the result of
*(Footnote Continued Next Page)*

minor, the corpus of the crime definitively proven and Appellant admitted to Fernandez his direct involvement in the murder. Thus, this record does not present the "exceptional instance" of the *Karkaria* rule. Rather, the standard rule applies where "[q]uestions regarding the reliability of the evidence received at trial to be within the province of the finder-of-fact to resolve, and [an appellate court] will not, on sufficiency review, disturb the finder-of-fact's resolution[.]" *Commonwealth v. Brown*, 52 A.3d 1139, 1165 (Pa. 2012).

Appellant's second argument is that his convictions are contrary to the weight of the evidence. However, he inappropriately incorporates his claims that the evidence was insufficient. Appellant's Brief, 66-67. Claims challenging the weight of the evidence and sufficiency of the evidence are clearly distinct. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000) (discussing the distinctions). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (quoting *Commonwealth v. Galindes*, 786 A.2d 1004, 1013 (Pa. Super. 2001)).

_____

conjecture and not reason"). Moreover, in *Bennett*, the only witness to appellant's alleged knowledge that a car was stolen "was Jones (who had been contradictory with respect to his own perpetration of the larceny) sought to implicate the defendant by giving several wholly different, conflicting and inconsistent versions of when and how he had told her that the car had been in fact stolen by him." *Bennett*, 303 A.2d at 220-221. Thus, the critical element of the case, whether Bennett knew the car was stolen, could not be decided with reason but only conjecture.

"An allegation [raised in a motion for a new trial] that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Widmer**, 744 A.2d at 751. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" **Commonwealth v. Talbert**, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting **Commonwealth v. Sullivan**, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Diggs**, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013). It "*is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.*" **Id**. (emphasis included) (quoting **Widmer**, 744 A.2d at 753). This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." **Id.** at 1056.

The trial court explained its reasons for denying Appellant's motion for a new trial, as follows:

> In denying Appellant's motion, this Court properly concluded that the jury's verdict did not shock the judicial conscience and was adequately supported by the weight of the evidence. As this Court

- 14 -

previously explained, and as Appellant concedes in challenging the weight of the evidence, there was sufficient evidence for the jury to convict Appellant of Murder of the First Degree. Hillary Quezada Perez testified that Appellant and Co-Defendant were at her house on September 18, 2019, when the decedent, Ivan Ortiz, came to the house as well. While Perez went to speak with the decedent at the front of the house, Appellant and Co-Defendant exited out the back. When she realized the decedent was not there, Perez heard gunshots from the back of the house. She opened the back door and found the decedent shot and bleeding, then saw what she believed to be Appellant's vehicle driving away. N.T. 6/8/2022, at 168-202.

Angel Fernandez, who was related to the decedent, Appellant, and Co-Defendant, testified that he directly asked Appellant and Co-Defendant if they had something to do with the decedent's death. Appellant and Co-Defendant confirmed they encountered the decedent when they left Perez's house. The decedent came toward them with a weapon, which Appellant and Co-Defendant thought was either a gun or a stick. Appellant shot the decedent first, then Co-Defendant "finished" him. Both Appellant and Co-Defendant told Fernandez that Co-Defendant killed the decedent when he was down. Fernandez also testified that he knew Appellant to carry a Ruger 9mm. N.T. 6/9/2022, at 118-151.

The Commonwealth's other witnesses corroborated key aspects of the testimonies provided by Perez and Fernandez. … This Court thus found the testimony provided by Perez and Fernandez to be credible and independently corroborated by the Commonwealth's other witnesses. Accordingly, the Commonwealth presented compelling testimony and evidence supporting Appellant's guilt. The testimony and evidence presented at trial was thus not so "tenuous, vague and uncertain" such that the jury's verdict finding Appellant guilty of Murder of the First Degree shocked the conscience of this Court.

Trial Court Opinion, 19-20.

We affirm because the trial court's reasoning is thorough and reasonable, and far from an abuse of discretion. ***Commonwealth v. Rice***, 902 A.2d 542, 547 (Pa. Super. 2006) (where trial court's "conclusions are

logical and supported by evidence of record" then it "did not commit a palpable abuse of discretion" by rejecting a weight claim).

Appellant asks this Court to substitute his evaluation of the evidence for that of both the jury and the trial court by highlighting the testimonial discrepancies he believes should outweigh the "compelling evidence" of his guilt. Appellant's Brief, 69-72.[4] This we cannot do. It would be reversible error for this Court to "step[…] into the shoes of the trial judge and revisit[…] the underlying question of whether the verdict was against the weight of the evidence." **Clay**, 64 A.3d at 1056. Moreover, all the alleged inconsistencies and contradictions were brought to the attention of the jury, which as the fact finder was the final arbiter of credibility and weight. **See Commonwealth v. Small**, 741 A.2d 666, 673 (Pa. 1999) (where "all of the matters complained of by appellant … were issues argued by appellant's counsel during trial and were properly weighed and rejected by the jury before it reached its verdict" then appellate weight claim fails).

In Appellant's third claim he contends that the trial court's charge, consistent with the Standard Jury Instruction based on 18 Pa.C.S. § 6104, "seems to violate fundamental due process under the Fourteenth Amendment of the United States Constitution" because it "creates an inference or a

---

[4] Appellant argues with perfect circularity that "[t]hese contradictions and inconsistencies should shock one's conscious since they demonstrate the convictions for murder of the first degree and all of these related offenses were against the weight of the evidence since the evidence is extremely contradictory and inconsistent." Appellant's Brief, 68.

presumption that is unfair." Appellant's Brief, 74. Appellant's claim is not presently reviewable because the record does not document a timely objection to the instruction. Nevertheless, the instruction informed the jury correctly of a proper permissive inference and so did not violate the Fourteenth Amendment.

The trial court instructed the jury, in pertinent part, as follows:

If you find that the defendant used a firearm in committing the murder, the acts constituting the violation of the offense, and that the defendant did not have a license to carry the firearm as required by law, you may regard that as one item of circumstantial evidence on the issue of whether the defendant intended to commit the crime of murder as otherwise charged.

It's for you to determine what weight, if any, you will give that item of circumstantial evidence. Evidence of non-licensure is not sufficient alone to prove that the defendant intended to commit the offense of murder.

N.T. 6/13/22, 234-235.

In order to preserve a claim that an instruction given to the jury was erroneous, an appellant must object to the instruction prior to the jury commencing deliberations. Pa.R.Crim.P. 647(B); ***Commonwealth v. Pressley***, 887 A.2d 220, 225 (Pa. 2005); ***Commonwealth v. Baker***, 963 A.2d 495, 506 (Pa. Super. 2008). At the end of the court's instructions, and prior to the jury commencing deliberations, the trial court presented the co-defendants with an opportunity to preserve an objection to its instructions:

Counsel, do we need to see each other at all?

[Appellant's Counsel]: Just one point.

- - -

- 17 -

(Whereupon, a discussion was held at sidebar.)

- - -

N.T. 6/13/22, 237.

The discussion at sidebar was not transcribed. The trial court did not relate for the record the matters discussed in the sidebar. Nor, for that matter, did Appellant request the trial court do so. Without a specific objection on the record, the requirements of Rule 647(B) are not met, and the claim is waived for appellate review. ***Pressley***, 887 A.2d at 225; ***Commonwealth v. Marquez***, 980 A.2d 145, 151 (Pa. Super. 2009) (*en banc*). ***See also Commonwealth v. Russell***, 938 A.2d 1082, 1093 (Pa. Super. 2007) (holding that, in order to preserve for appeal a challenge to a jury charge, the defendant must lodge a specific objection or exception to the jury charge itself).

Appellant asserts that counsel did raise the instant objection during the sidebar. Appellant's Brief, 73. The trial court notes that the record "clearly shows that neither Appellant's counsel nor counsel for Co-Defendant objected to any of this Court's instructions, including the instruction regarding evidence of intent," and therefore deems the claim waived. Trial Court Opinion, 27. Appellant argues that the trial court's conclusion is incorrect, and contends that counsel was "shocked to find out that the Court Reporter did not transcribe it," asserting co-defendant's counsel could confirm it. Appellant's Brief, 73-74. Appellant also notes he raised this claim in his post-trial motion and that counsel "certainly was not making it up that he objected." ***Id***. at 74.

It is certainly plausible that Appellant objected to this instruction during the sidebar. It may even be probable. But it is not on the record. As an appellate court, we cannot accept Appellant's assertion that he properly preserved his claim. He must have done so on the record. "The fundamental tool for appellate review is the official record of what happened at trial, and appellate Courts are limited to considering only those facts that have been duly certified in the record on appeal." **Commonwealth v. Williams**, 715 A.2d 1101, 1103 (Pa. 1998). Thus, "an appellate court is limited to considering only the materials in the certified record when resolving an issue." **Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*).

Appellant's contentions that it was the court reporter's fault that his objection was not transcribed, and not his fault, do not relieve him of this waiver. Our Supreme Court explained that litigants have "procedures provided by our Rules of Criminal and Appellate Procedure for the correction of . . . errors" in the record. **Commonwealth v. Montalvo**, 244 A.3d 359, 366 (Pa. 2021). That is, prior to taking the appeal, Appellant could have used Rule 115(c) to "correct" the transcript. Pa.R.Crim.P. 115(C)( "At any time before an appeal is taken the transcript may be corrected, and the record may be corrected or modified, in the same manner as is provided by Rules 1922(c) and 1926 of the Pennsylvania Rules of Appellate Procedure"). After taking the appeal, he could have used the procedures set out in Rule 1926 to "correct" or "modify" the record, including ay omissions or misstatements. Pa.R.A.P. 1926(a) ("If any difference arises as to whether the record truly discloses what

occurred in the trial court, the difference shall be submitted to and settled by that court after notice to the parties and opportunity for objection, and the record made to conform to the truth"); 1926(b)(" If anything material to a party is omitted from the record by error, breakdown in processes of the court, or accident or is misstated therein, the omission or misstatement may be corrected by the following means:…"). Appellant used none of these procedures to "correct" the record. Therefore, the record does not support his assertion that the instruction claim was properly preserved.

Regardless, Appellant's claim lacks merit. Our Supreme Court has affirmed the legal validity of the instruction where, as here, the jury was informed of the ability to make a permissive inference based on the evidence before it, and the evidence indeed supported such an inference in the case. *See generally Commonwealth v. Hall*, 830 A.2d 537, 549-50 (Pa. 2003). *See also Commonwealth v. Ortiz*, 2313 EDA 2022, 2024 WL 2019453, *4 n.3 (Pa. Super., filed May 7, 2024) (reviewing claim raised by co-defendant on identical record) (unpublished non-precedential memorandum decision cited for persuasive value in accordance with Pa.R.A.P. 126(b)).

A permissive inference like the one at issue here, comports with due process where the inference to be drawn has a rational connection to the circumstances of the instant case. *See County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 157 (1979); *Commonwealth v. Natividad*, 938 A.2d 310, 330 (Pa. 2007).

Appellant argues that the court's use of the words "may" would have indicated to the jury that it was a mandatory inference. Appellant's Brief, 78-79. This assertion is contrary to basic tenets of the English language. Read in its entirety, the instruction clearly permitted the jury to elect to use the inference as one circumstance, alone not sufficient, to determine that Appellant intended to commit murder. It was not required to do so.

Appellant's assertions that the inference is both "unfair" as it "relieves the Commonwealth of its burden of proof" and "has no basis in terms of determining whether there was an intentional killing," Appellant's Brief, 79 & 81, may have been an attempt to put before this Court the question of whether the inference of intent that may be drawn in accordance with the court's instruction had a rational connection to the circumstances presented. Appellant's subsequent argument on this point, however, is merely a general assertion that unlicensed possession of a firearm, in one's own home, has no connection to a killing committed somewhere else. Appellant's Brief, 79. It thereby fails to persuade us that he is entitled to relief. *See Hall*, 830 A.2d at 547 (in the case of mere permissive inference, the constitutional challenge cannot be raised in the abstract; "the defendant must demonstrate that the inference as applied to him violated his right of due process"). Moreover, the evidence showed that Appellant directly possessed the firearm at the time of the murder, so Appellant's abstract complaint is irrelevant.

Nor was the permissive inference critical. Appellant and co-defendant were well aware of the victim's attempts to get into Perez's home and also of

his prior confrontation with co-defendant on the phone. They spoke in whispers together and, in possession of an unlicensed and loaded firearm, left the house by the rear door where they confronted the victim; Appellant shot him once in the chest and then co-defendant shot him four more times in the back to finish him while he was on the ground. Appellant's intent to kill was inferable from his use of the deadly weapon to shoot the victim in a vital part of his body and then again by handing the firearm to co-defendant to shoot him four more times. This evidence vastly outweighed the permissive inference.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/3/2024